A Coal-Float *v.* The City of Jeffersonville.

Filed Sept. 30, 1887.

—————◆—————

No. 12,916.

A COAL-FLOAT *v.* THE CITY OF JEFFERSONVILLE.

CITY.—*Ordinance.*—*Reasonableness of.*—*Legislative Authority.*—An ordinance can not be held to be unreasonable which is expressly authorized by the Legislature.

SAME.—The power of a court to declare a city ordinance unreasonable, and therefore void, is practically restricted to cases in which the Legislature has enacted nothing on the subject-matter of the ordinance, and where the same was passed under the supposed incidental power of the corporation merely.

SAME.— *Lien on Water-Craft.* — *Wharfage.* — *Statute.*—Where the common council of a city passes an ordinance fixing the rate of wharfage to be paid by boats, etc., it is not necessary to the enforcement of a lien against a boat for delinquent wharfage that the ordinance should provide for such enforcement. When such delinquency occurs, the city may proceed under the provisions of section 5277, R. S. 1881, which fixes the lien, and have a judgment *in rem* against the boat for the amount due.

From the Clark Circuit Court.

*J. H. Stotsenburg* and *J. K. Marsh,* for appellant.

*G. H. Voigt,* for appellee.

NIBLACK, J.—The judgment appealed from in this case is based upon a proceeding in attachment instituted by the City of Jeffersonville against a coal-float, the name of which was unknown, and John Plotz, its owner, to recover the sum of $50, alleged to be due for wharfage.

The proceeding was commenced before the mayor of the city, where the plaintiff obtained judgment for the amount.

demanded, and the coal-float was ordered to be sold to pay the judgment.

Upon an appeal to the circuit court, Plotz, on his own behalf, as well as that of the coal-float, moved to dismiss the action :

*First.* Because the ordinance requiring the payment of wharfage was an unreasonable, and hence an invalid, ordinance.

*Second.* Because the coal-float was a part of the wharf, and not a boat or craft within the meaning of the ordinance set out in the complaint.

*Third.* Because the ordinance by its terms created only a personal liability, and, therefore, did not provide for a lien upon boats or craft of any kind.

*Fourth.* Because, upon the facts stated in the complaint, no lien attached to the coal-float.

*Fifth.* Because a coal-float can not contract an indebtedness.

*Sixth.* Because there was no law authorizing the enforcement of a lien against a coal-float by attachment.

The court declining to sustain this motion, Plotz then moved to dismiss the attachment proceedings against the coal-float, upon the ground that the ordinance relied on for the collection of wharfage was unlawful and void, as previously claimed; but this motion was in like manner not sustained.

The court, after hearing the evidence, found that there was due the city as a balance on wharfage against the coal-float the sum of $13, and that the attachment proceedings ought to be sustained, and accordingly rendered a judgment for the sale of the coal-float and its furniture and apparel to pay the amount so found to be due and certain specified costs, but declined to award a personal judgment against Plotz.

Error is assigned upon the alleged insufficiency of the complaint, upon the overruling of the motions to dismiss the ac-

tion and the attachment proceedings respectively, and upon the refusal of the court to order a new trial.

The complaint represented that the city of Jeffersonville, on the 25th day of October, 1881, adopted an ordinance providing, amongst other things, that "all steamboats, barges, keel-boats, flat-boats, or other boats or rafts, coming to, or landing at, the wharves of said city, shall pay to said city for the use of said wharves the following sums, to wit : * * * * For every coal-float, used and owned by regular dealers in coal at said wharves, the sum of $200 per year, payable monthly, provided that no more space shall be occupied than the length of such float ; " that John Plotz was, during the months of May, June and July, 1885, the owner of a coal-float, the name of which was unknown, attached to a wharf on the Ohio river within the corporate limits of said city, and was, during all that time, a regular dealer in coal, using said coal-float in the prosecution of his business as such dealer ; that on the 3d day of August, 1885, which was after the indebtedness for wharfage for said months of May, June and July became due, and before the commencement of this action, Andrew J. Burlingame, wharfmaster of said city, demanded of the said John Plotz the sum of $50, the amount due for such wharfage, and payment was refused by him, the said Plotz.   All of which was verified by the affidavit of Burlingame.

The objections to the complaint are, that the ordinance set out in it was, upon its face, an unreasonable, and, consequently, an invalid ordinance, and that, upon the facts alleged, no cause of action is shown against the coal-float, as it is an inanimate thing, and therefore incapable of contracting an indebtedness, and as no lien was expressly provided for in such a case by the ordinance.

As this proceeding was commenced before the mayor of a city, and as the amount involved did not exceed $50, this court would have no jurisdiction of this appeal were it not

that the avowed object in prosecuting it is to test the validity of the ordinance referred to in, and relied upon by, the complaint. R. S. 1881, section 632.

The power to adopt rules, regulations, by-laws and ordinances, not inconsistent with its charter, is inherent in every municipal corporation and is fully recognized by existing statutes of the State. R. S. 1881, section 3099; Dillon Munic. Corp., section 315. It is only requisite that such rules, regulations, by-laws or ordinances shall not be against common right, or palpably unreasonable, as applicable to the subjects to which they relate. *State, ex rel.*, v. *White*, 82 Ind. 278 (42 Am. R. 496); Dillon, *supra*, section 319; *Fertich* v. *Michener*, 111 Ind. 472.

The thirty-fourth subdivision of section 3106, R. S. 1881, confers upon cities the power " To establish and construct wharves, docks, piers, and basins; and to regulate landing places, and to fix the rates of landing, wharfage, and dockage on all public grounds belonging to such city. All claims for landing, wharfage and dockage, accruing to said city, shall be a lien upon the boat, vessel, or water-craft contracting the same; and after a demand made by the wharfmaster upon the owner or master, clerk, or consignee thereof, and refusal of payment, may be enforced by attachment before the mayor of said city, where the amount does not exceed one hundred dollars, in the same manner and to the same extent that liens on boats and other water-craft are now enforced under the general laws of this State, and all proceedings shall be conformable thereto as far as practicable."

Section 5277 of the general laws embraced in the Revised Statutes of 1881 provides that "All boats, vessels, and water-craft of every description, found in the waters of this State, including wharf-boats and floating warehouses used for the storing, receiving, and forwarding of freights, which are liable to be removed from place to place, at the pleasure of the owner or owners of the same, are liable"—*First.* For all debts contracted within this State, by the master, owner, agent,

clerk, or consignee thereof, on account of certain specified classes of things.   *Second.*  For all demands or damages arising out of transactions concerning certain enumerated classes of business.   *Third.*  For all injuries of a particular designated character.

Section 5278 declares all such debts, demands for damages, and claims for injuries to be a lien on all such boats, vessels or water-craft.

Section 5280 is as follows:  "Any person aggrieved may have an action against such boat, vessel, or water-craft in the county where the same may be found, or against the owners thereof, to enforce any such lien.   If the complaint in such action show the particulars of the demand, the amount due, and a demand made upon the owner, master, clerk, or consignee thereof, and refusal of payment, verified by the affidavit of the plaintiff or other person in his behalf, an order of attachment shall be issued by the clerk against the boat, vessel, or other water-craft, and the tackle and furniture thereof, which shall be directed, executed, and returned as an order of attachment in other cases."

As has been shown by so much of the thirty-fourth subdivision of section 3106 as we have set out as above, cities are expressly authorized not only to establish and construct wharves, docks, piers and basins, and to regulate landing places, but also to fix the rates of wharfage and dockage, as well as of landing.

No question is made upon the power of the Legislature to confer such an authority upon the cities of the State, and none could be successfully made, since the precedents for the exercise of such a power are both numerous and of long standing.

While the *reasonableness* of an ordinance is a question of law for the decision of the court, an ordinance can not be held to be *unreasonable* which is expressly authorized by the Legislature.   The power of a court to declare an ordinance *unreasonable,* and therefore void, is practically restricted to

cases in which the Legislature has enacted nothing on the subject-matter of the ordinance, and, consequently, to cases in which the ordinance was passed under the supposed incidental power of the corporation merely. On that subject see, also, Dillon, *supra*, sections 319 and 328.

At section 357 Dillon says: "Charters not unfrequently confer upon the corporation the power 'to license and regulate' or to 'license, regulate, and tax,' certain avocations and employments, and to 'tax and restrain' or 'prohibit' exhibitions, shows, places of amusement, and the like, and unless there is some specific limitation on the authority of the Legislature in this respect, such provisions are constitutional."

The general principle thus announced is well sustained both by precedent and authority; and as there is no such limitation upon the authority of the Legislature in this State, the city of Jeffersonville is, and long has been, in full possession of the power to fix the rates of wharfage, as well as of landing, at its wharves. This fixing of rates is only the exercise of the power of taxation in a particular form, and is hence a power which the Legislature was, and still is, authorized to confer.

It follows that the city of Jeffersonville was expressly authorized to adopt the ordinance in question, and that, having adopted it, no question as to its reasonableness is involved at the present hearing. Angell & Ames Corp., section 357.

Having in view a merely literal construction of the first part of the second clause of the thirty-fourth subdivision of section 3106, a boat, vessel or water-craft may contract a debt for landing, wharfage and dockage; but construing the entire subdivision in connection with section 5280, the plain meaning is, that the claims for which a city may have a lien and an attachment against a boat, vessel or water-craft for landing, wharfage or dockage, are such as have been contracted on behalf of the boat, vessel or water-craft by the owner, master, clerk or consignee; but as the action for the enforcement of the lien is a proceeding *in rem,* it proceeds upon the

theory that the debt or claim was contracted by the boat, vessel or water-craft against which the attachment is directed; hence the statutory expression that the class of claims referred to " shall be a lien upon the boat, vessel or water-craft contracting the same."

It was not necessary that the ordinance relied on in this case should have declared claims for wharfage to be a lien on the vessel " contracting the same." The ordinance having fixed the rate, and the debt having been contracted, the law affixed the lien.

The complaint appears to us to have been sufficient under the sections of the statute to which we have referred, and our conclusion in that respect leads us to hold that the circuit court did not err, either in overruling the respective motions to dismiss the action and the attachment, or in refusing to grant a new trial, as practically the same questions were involved in these rulings.

The judgment is affirmed, with costs.

