# WEIGAND *v.* DISTRICT OF COLUMBIA.

PURE FOOD LAW; MILK, SALE OF; STATUTES, WHEN REASONABLE AND WHEN UNREASONABLE; MUNICIPAL ORDINANCES; CONSTITUTIONAL LAW.

1. Section 13 of the act of Congress of March 2, 1895, regulating the sale of milk in this District, providing that milk taken for analysis shall be analyzed in the presence of two witnesses, one of whom may be the owner of the milk or his agent, is impliedly repealed by §§ 4, 6, 7, and 8 of the act of February 17, 1898, relating to the adulteration of foods and drugs in the District of Columbia, which provides that the seller of milk or other food for sale shall, upon application, furnish a sample thereof to the health department for analysis; and places the whole matter of the retail sale and disposition of drugs and food, including milk, under the supervision of the health department subject to the control of the commissioners.

2. If an act of Congress requires an impossible thing to be done, or something to be done in an impossible manner, the courts may declare it incapable of enforcement in a particular case, but a statute will not be declared void because of difficulty of construction or because of apparent hardship in its application, nor are the plain words of a statute to be refused their application upon any theory that a more reasonable provision could have been adopted for the state of the case presented.

3. While a municipal ordinance professed to have been passed under a general or implied power given by a statute must be reasonable and not oppressive and if it be not so it will be declared void, this is upon the presumption that the legislature did not intend by the general terms of the statute to authorize the making of such an ordinance.

4. In a prosecution in the police court charging the defendant with selling milk containing less than 3½ per cent of butter fat in violation of the act of Congress of February 17, 1898, an offer by the defendant to prove not that the act of Congress required milk to conform to an impossible standard or test, or that the milk offered for sale should contain constituents that nature did not supply, but that the standard prescribed was unreasonably high and could not by ordinary care be maintained through all seasons of the year is properly rejected by the trial court.

5. In such a prosecution, it is not error for the trial court to charge the jury that the extent and limit of their inquiry is whether the defendant sold the milk as charged and whether in fact it contained less than 3½ per cent of butter fat contrary to the act of Congress in

question; nor is it error for the trial court to refuse to allow the defendant to introduce evidence to show for what purpose he had the milk on hand, that being entirely immaterial if he sold milk that did not bear the test prescribed.

No. 1307. Submitted October 7, 1903. Decided November 5, 1903.

In ERROR to the Police Court of the District of Columbia.
*Affirmed.*

The COURT in the opinion stated the case as follows:

This case is brought here on writ of error to the police court of this District.

The plaintiff in error, Frank Weigand, the defendant below, was charged on information that he did, on the 13th day of December, in the year 1902, in the District of Columbia, and in the city of Washington, sell and offer for sale, a certain article of food, to wit, milk, which contained less than 3½ per cent of butter fat, contrary to and in violation of the act of Congress, approved February 17, 1898. The defendant pleaded not guilty, and the case was tried before a jury, and the verdict of guilty was rendered, upon which judgment was entered by the court.

In the course of the trial a bill of exceptions was taken to various rulings of the court on questions of the admissibility of evidence, the refusal of instructions to the jury, and to the charge of the court to the jury, upon the law and the evidence. There was also a motion in arrest of judgment, but that was founded upon matters of law that had been ruled upon at the trial, and the motion was overruled.

There are a great many errors assigned in the brief of the plaintiff's counsel, but it is only necessary to consider a few of them to dispose of the case.

Without pursuing the order of the assignment as contained in the brief, the following are the material assignments of error, and upon which the determination of the case depends, *viz.*:

1. That the court erred in holding that § 13 of the act of Congress, approved March 2, 1895, was repealed by the act of Congress of February 17, 1898.

2. That the court erred in not allowing the defendant to show, by extrinsic evidence, that the standard of milk prescribed by the act of Congress of February 17, 1898, was excessively high, and unreasonable; and in refusing to instruct the jury that if they believed from the evidence that the proportions of fat, and of solids not fat, as prescribed in the statute are unreasonable, and cannot be maintained under ordinary conditions, or in the exercise of ordinary care, then such proportions are unreasonable, unusual, and oppressive, and deprive the defendant of the use of his property; and for such reasons the portions of the act prescribing such proportions of fat and solids are void and unconstitutional; and the verdict should be not guilty.

3. That the court erred in declaring to and charging the jury, that the extent of their inquiry was whether the defendant sold the milk as charged, and whether it contained less than 3½ per cent of butter fat, contrary to the act of Congress.

4. That the court erred in refusing to allow the defendant to show the specific purpose for which he had the milk in his possession, and from which the sample in question was taken.

5. That the court erred in refusing to grant the defendant's prayers, 1, 2, 3, and 4. These assignments present all the questions that are material to be considered.

1. The act of Congress of March 2, 1895 [28 Stat. at L. 709, chap. 164], is entitled "An Act to Regulate the Sale of Milk in the District of Columbia, and for Other Purposes." The act consists of 15 sections, and not only fixes the standard and regulates the sale of milk in the District, but it undertakes to provide the ways and means of securing a pure and wholesome supply of milk to the consumers of the District. It regulates the manner of keeping of dairy farms within the District, as well as the sale of milk. Among the various provisions of this act we find the following:

"Sec. 6. That no person shall offer or have for sale in the District of Columbia any unwholesome, watered, or adulterated milk, or milk known as swill milk, or milk from cows that are fed on swill, garbage, or other like substance, nor any butter or cheese made from any such milk.

"Sec. 7.   That no person shall *knowingly* offer or have for sale any milk containing more than 88 per cent of watery fluid, and less than 12 per cent of total milk solids, of which at least 3 per cent shall be of fat.

"Sec. 8.   That no person shall sell, exchange, or deliver, or have in his custody or possession with intent to sell, exchange, or deliver skimmed milk containing less than 9 3/10 per cent of milk solids, inclusive of fat."   And by § 13 of the act, it is provided, "that in all cases of sampling, in the District of Columbia, milk taken for analysis shall be taken, examined, and analyzed in the presence of at least two witnesses, one of whom may be the owner of the milk or his agent; and in all cases such sampling shall be made according to the Babcock method, to wit, dumping the milk from one can to another not less than twice before sampling."

This act appears not to have worked well in all respects, at least, it was not satisfactory to the health department of the District.   Therefore, by the act of Congress of February 17, 1898, [30 Stat. at L. 246, chap. 25] entitled "An Act Relating to the Adulteration of Foods and Drugs in the District of Columbia," it is declared by subdivision of § 3, that milk shall be deemed to be adulterated within the meaning of this act, if it contains less than $3\frac{1}{2}$ per cent of fat, less than 9 per cent of solids not fat, and contains more than $87\frac{1}{2}$ per cent of water.

By § 4 of this latter act, it is provided "that it shall be the duty of the health officer of the District of Columbia, under the direction of the commissioners of said District, to adopt such measures as may be necessary to facilitate the enforcement hereof [this act], and prepare rules and regulations with regard to the *proper method of collecting and examining drugs and articles of food* in said District."

Section 6 provides, "that every person offering for sale, or delivering to any purchaser, any drug or article of food included in the provisions of this act shall furnish to any analyst or other officer or agent of the health department, who shall apply to him for the purpose, and shall tender him the value of the same, a sample sufficient for the purpose of analysis of any such drug or

article of food which is in his possession." And by § 7, it is provided "that in all cases where any drug or article of food shall be taken as a sample to be examined and analyzed, the person making the analysis shall reserve a portion of the sample, which shall be sealed, for a period of thirty days from the time of taking such sample, and in case of a complaint the reserved portion alleged to be adulterated shall, upon application, be delivered to the defendant or his attorney." Section 8 provides "that no person shall hinder, obstruct, or in any way interfere with any inspector, analyst, or other person of the health department in the performance of his duty in carrying out the provisions of this act."

The act then, by § 10, provides "that all acts and parts of acts inconsistent with this act be, and the same are hereby repealed: *Provided,* that nothing in this act contained shall be construed as modifying or repealing any of the provisions of 'An Act Defining Butter, Also Imposing a Tax Upon and Regulating the Manufacture, Sale, Importation, and Exportation of Oleomargarine,' approved August 2, 1886; or of 'An act Defining Cheese,' etc."

*Messrs. Leckie & Fulton* and *Mr. Joseph W. Cox,* for the plaintiff in error:

1. Repeals by implication are not favored, and unless a later statute expressly repeals a former one, so much of the former statute remains the law as is not clearly inconsistent with the terms of the later. 1 Blackstone, 90; *Harford* v. *U. S.* 8 Cranch, 109; *Wood* v. *U. S.* 16 Peters, 596; *U. S.* v. *Walker,* 22 Howard, 299; *Ex Parte, Crow Dog,* 109 U. S. 571; *Bride* v. *McFarland,* 18 D. C. App. 120, 125; *U. S.* v. *Sampson,* 19 App. D. C. 419, 435; *McCarthy* v. *McCarthy,* 20 D. C. App. 200. A general law does not operate a repeal of a special law upon the same subject passed previous to the general law. *McFarland* v. *State Bank,* 4 Pike, 410. See also: *Clay Co.* v. *Soc. for Sewings,* 104 U. S. 587; *McCool* v. *Smith,* 1 Black. 459; *State* v. *Stoll,* 17 Wall, 425, 430; *Arthur* v. *Homer,* 96 U. S. 137, 140; *Chew He-*

*ong* v. *U. S.* 112 U. S. 536, 550. In holding that § 13 was repealed by the later act, the trial judge evidently had in mind the principle of law applied in *District of Columbia* v. *Hutton,* 143 .U. S. 18, *viz.:* that when two acts are not in express terms repugnant, yet if the latter covers the whole subject of the first, and embraces new provisions plainly showing that it was intended as a substitute for the first act, it will operate as a repeal of that act. Can it be said that the act of 1898 covers the whole subject of the act of 1895 and was intended as a substitute for the first act? Is it not rather true that the first act is a special act in which, as was said in *United States* v. *Sampson,* cited above, "the mind of the legislator has been turned to the details of the subject," and the subsequent statute, a law "treating the subject in a general manner and not expressly contradicting the original act"? The latter statute deals with standards of foods and drugs generally; the former statute prescribes in detail regulations governing the handling and selling of a single article of food, namely milk, and incidentally fixes the standard. The subject matter of the two statutes is not the same, one is general, the other special. The regulations as to the selling of milk prescribed by the act of 1895, so far from being inconsistent with the terms of the act of 1898, stand as a mutual aid to the latter statute and serve to make the law as to the handling and selling of milk complete. It was necessary under the law of 1898 for the health office "to prepare rules and regulations with regard to the proper method of collecting and examining" some articles of food; but such was not necessary and has not been done by the health office in the case of milk, for the act of 1895 had already fixed the method, which was perfectly consistent with and an aid to the act of 1898.

It is, therefore, respectfully submitted that there is nothing in the act of 1898 inconsistent with § 13 of the act of 1895, that the section is in force, and that the conviction had in this case, in total disregard of said section, ought not to be allowed to stand.

2. The court has the power to inquire into the reasonableness of a police regulation established by Congress, and extrinsic evidence may be introduced at the trial to show the unreasonable-

ness of such a regulation. The power of Congress is not abso-
lute and arbitrary in respect to its control over the District of
Columbia, but must be exercised like the power of a state legis-
lature with due regard to the fundamental guarantees of the Con-
stitution and the policy of a free government. *Kerr* v. *Ross,* 5
App. D. C. 241, 247, 248; *Callan* v. *Wilson,* 127 U. S. 640;
*Lansburgh* v. *D. C.* 11 D. C. App. 512, 521; *Loan Association*
v. *Topeka,* 20 Wall. 622; *Curry* v. *D. C.* 14 App. D. C. 423,
439; *Stoutenberg* v. *Frazier,* 16 App. D. C. 229, 240; *Yick
Wo* v. *Hopkins,* 118 U. S. 356, 369; *Railway Co.* v. *Ellis,* 165
U. S. 150, 159.

The character of police regulations as to their reasonableness
is a question for the courts, and the right exists in a defendant
to show the unreasonableness of a statute or ordinance at the
trial. Dillon, Mun. Corp. § 338; *Yick Wo and Wo Lee* v. *Hop-
kins,* 118 U. S. 356; *Moore* v. *D. C.* 12 D. C. App. 543; *R. R.* v.
*D. C.* 10 App. D. C. 127; *Kerr* v. *Ross,* 5 D. C. App. 241–249;
*Mugler* v. *Kansas,* 123 U. S. 623–661. See also *In re Jacobs,*
98 N. Y. 98; *People* v. *Gillson,* 109 N. Y. 389; *Colan* v. *Lisk,*
153 N. Y. 188; *Ruhrstrat* v. *People,* 185 Ill. 133; *People* v.
*Warden,* 144 N. Y. 529–535; *McCullough* v. *Brown,* 41 S. C.
220. Could Congress arbitrarily forbid the use of pure milk
as an article of food in the District? We believe such an act of
Congress would certainly be declared void by the courts. Could
Congress indirectly do the same thing by forbidding the sale of
milk unless it contained an impossible percentage of butter fats,
say for example 25 per cent? Would not a man, charged with
supplying milk in violation of such a statute, have a right to
show on his trial that such a statute was unreasonable? If it
is impossible to maintain a standard of $3\frac{1}{2}$ per cent of butter
fats in milk, as maintained by the defendant, is not the standard
unreasonable? And has not the defendant the right to show to
the court that such a standard cannot be maintained?

It might have happened that the defendant could not have
shown that the standard was unreasonable, and the District
might have been able to show that the standard could be main-
tained. But the questions now submitted to the court are, Did

not the defendant have the right to attack the reasonableness of the regulation by introducing evidence for the purpose? And was it not error for the court to deny him that right?

3. The unmistakable tendency of the rulings of the lower court and its charge was to give the jury the impression that there was but one issue of consequence in the case. The record shows that throughout the trial up to the time when the court came to charge the jury, the rulings of the court were such as to call the attention of the jury to but one of the questions of fact. And when in his charge the court pointed out the other question of fact, his comments immediately following were of such a nature as to indicate to the jury that the testimony of the defendant upon that question was of little value.

These rulings and comments it is respectfully contended were inconsistent with a fair and impartial trial of the defendant according to the policy of our laws, and even if they stood alone would justify a reversal of the judgment of the trial court.

4. It was proposed to show by the defendant the purpose for which he had in his possession the milk from which the sample was taken. The testimony was in conflict as to whether or not there was an actual sale of the sample. The purpose for which the defendant had the milk would have helped the jury to determine the probability of his selling it. If he had the milk for sale, it would be natural to expect that he would have sold the sample. If the milk was old milk, and not on hand for sale but for some other purpose, it would be improbable that he would sell a sample of such milk to a man whom he knew to be the inspector. The milk being in defendant's possession, unless the reason for his having the milk was explained, the jury might naturally infer that he had it for sale and sold it. If the defendant did not have the milk for sale in violation of the law, but for some other purpose, it was his right to have that purpose made known to the jury.

It is true that the defendant had already stated that he had the milk for "smear-case," and his son had stated that the milk from which the sample was taken was not for sale; yet when the trial judge, in the presence of the jury, ruled that they were not

entitled to know for what purpose the defendant had the milk, it was practically equivalent to ruling out the statement the defendant had made.

*Mr. Andrew B. Duvall,* Corporation Counsel, and *Mr. E. H. Thomas,* Assistant, for the defendant in error:

1. The act of Congress approved February 17, 1898, is the sole rule of law governing and did not require the test prescribed by the former law.

2. Congress had the power to fix the standard prescribed by the act approved February 17, 1898. The legislature is the sole judge of the necessity of preventing deception in sale of an article by appropriate legislation. *Powell* v. *Pennsylvania,* 127 U. S. 678. An act of Congress declaring the emission of certain smoke to be a nuisance is a valid and constitutional exercise of the police power of Congress over this District. *Moses* v. *U. S.* 16 App. Cases, D. C. 428; *Bradley* v. *D. C.* 30 W. L. R. 455; *Sinclair* v. *D. C.* 30 W. L. R. 515. The act of February 17, 1898, has been sustained by this court. *D. C.* v. *Lynham,* 16 App. Cases, D. C. 85. An ordinance of the city of New Orleans requiring that milk should contain "butter fat (3½) three and one-half per cent solids not fat (9½) nine and one-half per cent" is a legitimate exercise of the police power for the public health. *State* v. *Dupquier,* 26 L. R. A. 162. An ordinance requiring cream to contain twenty per cent butter fat is valid. *State* v. *Crescent Creamery Co.* 54 L. R. A. 466. The act of February 17, 1899, requires milk to contain not less than 3½ per cent of fat, nor less than 9 per cent of solids not fat, and in the case of cream not less than 20 per cent of butter fat. An ordinance of the city of Baltimore required that milk should not be sold that had less than 3 per cent of butter fats, and that all milk kept or offered for sale in the city, which did not come up to the standard thus prescribed should be considered impure, adulterated, or unwholesome. In affirming a prosecution for a violation of this ordinance the court said: "The use of milk as an article of food enters largely, as we all know,

in the daily consumption of every household, and there is no more fruitful source of disease than the use of adulterated and unwholesome milk. And if the appellant's contention be right, that the question whether or not milk, which is daily offered for sale in every part of a large and populous city, comes up to the standard prescribed by the ordinance, must be determined by the ordinary process of judicial investigation or by chemical analysis, it would be impossible to prevent the danger to the public health necessarily resulting from impure and unwholesome milk. And it is absolutely necessary, therefore, that the defendant in error should have the power to provide for its inspection by *proper means and instruments,* and if upon such inspection it shall be found not to come up to the standard prescribed by the ordinance, to direct that *the offending thing shall be destroyed.*" *Deems* v. *Mayor,* 80 Md. 164, 174, 175; see *State* v. *Broadbelt,* 89 Md. 565. The clause fixing the standard *does not establish a rule of evidence,* but creates a new offense. "It is the purpose of the statutes to prohibit not merely the dealing in milk which has been adulterated, but also the dealing in milk of such inferior quality as to fall below the standard required." *State* v. *Dupquier,* 26 L. R. A. 162; Tiedeman, Lim. of Police Power, p. 292, 1.

3. The question of fact as to whether the milk ran below the standard fixed by law was submitted to the jury.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

Upon comparing the provisions of the acts of 1895 with those of the later act of 1898, such as relate to the subject-matter of this prosecution, we think it clear beyond reasonable doubt, that § 13 of the former act has been repealed by operation and fair intendment of §§ 4, 6, 7, and 8 of the latter act of 1898; and this was simply affirmed by the last section of the act of 1898, when it declared that all acts and parts of acts inconsistent therewith were thereby repealed. It is conceded that § 7 of the act of 1895 was repealed by the provision in the subsequent act changing the marketable standard of milk; and we think § 13 of

the act of 1895 is also repealed, because inconsistent with the provisions of the latter act, and because the provisions of the latter act were intended to furnish the one general and sole rule upon the subject.    The act of 1895, however, is only impliedly repealed by the subsequent act of 1898, *so far* as the provisions of the latter act are repugnant to it, *or so far only* as the latter statute, making new provisions, is plainly intended as a substitute for provisions contained in the former act. *Henderson's Tobacco,* 11 Wall. 652, 20 L. ed. 235 ; *Fabbri* v. *Murphy,* 95 U. S. 191, 24 L. ed. 468.    It was not, clearly, the purpose or intention of Congress, in passing the act of 1898, to keep in existence two different methods of examining and testing of milk, any more than it was to keep in existence two different standards or tests of the purity of the article.    The act of 1898 not only changed the previous standard of milk that could be offered for sale in the District, but it made substantial changes in the method of examining and subjecting to test the milk offered or that could be offered for sale.    After the passage of the act of 1898, it was no longer necessary to make the analysis in the presence of two witnesses as previously required; that was found to be productive of delay and inconvenience.    Instead of making the analysis in the presence of two witnesses, the party having the milk or other articles of *food for sale* is required, upon application, to furnish a sample thereof, to an officer of the health department for analysis, and the party analyzing the article is required to reserve a portion of the same, sealed, for thirty days, which in case of complaint, shall be delivered to the defendant or his attorney.    It is objected that milk cannot be preserved for such length of time.    But it is shown by the testimony of the chemist that, by the use of a sterilized bottle, milk may be preserved for an indefinite time.    The whole subject of the retail sale and disposition of drugs and articles of food, including milk, has, by the act of 1898, been placed under the supervision and regulation of the health department of the District, subject to the control of the commissioners, as a means of protection against adulteration and impurity of the articles offered for sale.    As we have seen, the health officer is required to adopt such measures

as may be necessary to facilitate the enforcement of the act, and to prepare rules and regulations with regard to the proper method of collecting and examining drugs and articles of food; and this power fully embraces the method of examining and testing milk as prescribed in § 13 of the act of 1895.

2. The next assignment of error is that in regard to the supposed right of the defendant to show by evidence, and to have the jury instructed, that the provision of the act of Congress of 1898, prescribing the standard of milk for sale in this District, is unreasonable and oppressive, and therefore void. This assignment of error presents a question of the gravest importance, and one which can only be made in an extreme case. To declare an act of Congress unreasonable and oppressive and therefore void is a power that the courts cannot exercise, except where the provision of the statute is shown to be plainly violative of some provision of the Constitution. The subject-matter of the act of 1898 is plainly within the power of Congress; and the courts cannot amend or modify any of the provisions of that act so as to bring them within what may seem to be reasonable bounds. They cannot examine questions as expedient or inexpedient, as politic or impolitic. Considerations of that nature must, in general, be addressed to the legislature. Questions of policy determined there are conclusive with the courts. *License Tax Cases,* 5 Wall. 462, 475, 18 L. ed. 497, 502. If, by the plain words of an act of Congress, an impossible thing was required to be done, or some thing done in an impossible manner (if such legislation could be rationally supposed to occur), in such case, the courts would have no alternative but to declare the statute to be incapable of enforcement in the particular case. But statutes are not to be declared void because of difficulty of construction, or because of apparent hardship in their application; nor are the plain words of a statute to be refused their application upon any theory that a more reasonable provision could have been adopted for the state of case presented. All statutes must receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion. *Lau Ow Bew* v. *United States,* 144 U. S. 47, 59, 36 L. ed. 340, 345,

12 Sup. Ct. Rep. 517; *Hawaii* v. *Mankichi,* 190 U. S. 213, 47 L. ed. 1021, 23 Sup. Ct. Rep. 787. It is true, a municipal ordinance professed to be passed under a *general or implied power* given by a statute, must be reasonable and lawful, and not oppressive, and if it be not so it will be declared void. But this is upon the presumption that the legislature did not intend by the general terms of the statute to authorize the making of such an ordinance. 1 Dill. Mun. Corp. § 319; Cooley, Const. Lim. 6th ed. 192–3. And it has therefore been held that an ordinance cannot be held to be unreasonable and void, which is expressly authorized by the legislature. *A Coal-Float* v. *Jeffersonville,* 112 Ind. 15, 13 N. E. 115; Cooley, Const. Lim. 241.

In this case, the offer was made to show, and the court was requested to declare, not that the act of Congress required milk to conform to an impossible standard or test, or that the milk offered for sale should contain constituents that nature did not supply, but that the standard prescribed was unreasonably high, and could not, by ordinary care, be maintained through all seasons of the year. There may be difficulty in keeping up the standard throughout the year; and more expense and greater effort may be required at some seasons of the year than at others. But the very object of the statute was to require this more than ordinary expense and labor, on the part of the owner of cows, to keep up and maintain the prescribed standard of milk, when necessary; and this is accomplished by proper care of, and food supplied to, the animals producing the milk. For it is well known that the quality and richness of milk depend largely upon the condition of the animal, the care with which it is kept, and the kind and quantity of food supplied to it. It is not attempted to be shown that 3½ per cent of fat, as a constituent of good milk, is greater than can be supplied by proper care of, and good and abundant food supplied to, the cows. If the proposition of the defendant were sustained, the question of the reasonableness of the statute would be one of fact for the jury; and we should likely have different juries determining the question in different ways. We think the court was clearly right in its ruling upon this question, and in holding that the question whether the

standard of milk prescribed by the statute was reasonable or not was not open to inquiry on the trial.

3. The next question is upon the assignment of error upon the ruling of the court as to the extent of the inquiry open to the jury. The court instructed the jury that the extent and limit of their inquiry was whether the defendant sold the milk as charged, and whether in fact it contained less than 3½ per cent of butter fat, contrary to the act of Congress. We perceive no error in thus charging the jury. The question of intent was not involved, as it would have been if the case had been under § 7 of the act of March 2, 1895, before its repeal. But under § 3 of the act of 1898, the question is whether the sale was made of the article, which was in fact under the standard prescribed by the law. The party making the sale is bound, at his peril, to know what he is selling, and, to keep within the law, he must know that the article complies with the standard of excellence and purity prescribed by the law. Unless this be so, it would be very difficult, if not impossible, ever to convict a party of a violation of the law. And for the same reason, the court below was right in refusing to allow the defendant to introduce evidence to show for what purpose he had kept the milk on hand,—that being entirely immaterial, if he sold the milk that did not bear the test prescribed. The question of sale, and the question whether the milk conformed to the standard prescribed by the statute were both fully and fairly submitted to the jury; and upon the finding of those facts the case was fully made out against the defendant.

In what we have said, we have embraced all the material questions raised by the assignment of errors; including the assignments made for the refusal of the court to grant the first four prayers offered by the defendant for instructions to the jury.

We find no error, and must affirm the judgment; and it is so ordered.                          *Judgment affirmed.*