St. Louis Southwestern Railway Company of Texas v.
W. C. Bolton, Next Friend of Pearl Bolton.

Decided May 12, 1904.

**1.—Contributory Negligence—Child.**

Evidence considered and held, in view of the age and intelligence of plaintiff, to justify a finding that plaintiff was not guilty of contributory negligence in failing to jump from a trestle on the approach of a train.

**2.—Negligence—Discovered Peril—Failure to Stop Train.**

Evidence considered and held sufficient to show negligence on the part of the operatives of defendant's train in failing to use every means in their power, consistent with the safety of those on the train, to avoid injuring plaintiff after discovering her perilous position.

**3.—Speed of Trains—City Ordinance—Reasonableness.**

A city ordinance regulating the speed of trains within the city limits at six miles per hour will not be held unreasonable in the absence of a showing that the application of such ordinance to the portion of the city in which the accident occurred would interfere with the proper operation of trains and the proper discharge of the railway's duty to the public.

**4.—Railway—Trespasser—Negligence—Duty of Lookout.**

Where the operatives fail to keep a proper lookout to discover persons on the track the railway would be liable to any person injured by such negligence who was not guilty of contributory negligence. Such liability would extend to injury to a trespasser upon the track, where such trespasser was a child; and the right to recover is not confined to cases of negligence after discovery of the perilous position of such trespasser.

**5.—Charge—Omission—Measure of Damages.**

Having failed to request a special instruction supplying an omission in a charge upon measure of damages, such charge containing no affirmative error, plaintiff recovering a verdict can not complain of such omission on appeal.

**6.—Verdict—Not Grossly Inadequate.**

Verdict of $4000 for injuries received by a child knocked from a trestle by a train, held not so inadequate as to require a reversal of judgment.

Appeal from the District Court of Smith. Tried below before Hon. R. W. Simpson.

*E. B. Perkins* and *Marsh & McIlwaine*, for appellant.

*Johnson & Edwards,* for appellee.

PLEASANTS, Associate Justice.—This suit was brought against appellant by the appellee, W. C. Bolton, as next friend and guardian of the estate of Pearl Bolton, a minor, to recover damages for personal injuries inflicted upon said minor through the alleged negligence of the appellant's employes.

The trial in the court below resulted in a verdict and judgment in favor of plaintiff for the sum of $4000. We copy from appellant's brief the following general statement of the circumstances under which plaintiff's ward was injured:

"Pearl Bolton was struck and injured by one of appellant's locomotives on the 16th day of January, 1901. When struck she was on what is known as Black Fork bridge, one of appellant's trestles, 204 4-10 feet long. She would have been 11 years old her next birthday, which

occurred on the 11th of March thereafter. She, with her brother, Tracy Bolton, her senior by twenty months, and Laura Cowenlock, a girl of the age of 13 years, and Bob and Eddie Cowenlock, boys of the ages of 10 and 7 years, respectively, started across the bridge, going from the south to the north, as they testified, to look at a lot of cattle which were being fed in a pasture north of the bridge. They left their respective homes for the purpose of looking for flowers. After wandering around for a while they got upon appellant's track south or west of the bridge, and having seen the cattle, made up their minds to go down to where they were. The engine that struck her was pulling one of defendant's regular south-bound passenger trains, which was scheduled to arrive at Tyler from the north at 2:15 o'clock p. m. The accident occurred not far from that hour. When the train was seen approaching the other children got off the bridge and were not injured. Pearl attempted to run back towards the south, and was struck a short distance from the end of the bridge."

The first and second assignments of error are presented together and assail the verdict of the jury on the ground that it is against the great weight and preponderance of the evidence, in that the evidence shows that Pearl Bolton was guilty of contributory negligence in not leaving the bridge after she saw the approaching train, and further shows that said Pearl Bolton had no right to be upon appellant's track at the time and place at which she was injured, and that the operatives of the train after they discovered her peril used every means at their command consistent with the safety of those upon the train to avoid the accident.

These assignments can not be sustained. The evidence shows that when Pearl first saw the approaching train she was walking along the east side of the bridge or trestle and that the creek on that side of the trestle was filled with water. This trestle was about 200 feet long and between four and five feet high. The other children who were with Pearl jumped from the bridge and were not hurt. When the train was discovered Pearl was about three-fourths of the distance across the trestle going from the south. She turned and ran back towards the south end of the trestle and was struck by the train when about twelve feet from that end. She testified that she was so badly frightened when she discovered the rapidly approaching train that she did not know what she was doing. She says:

"The first thing that attracted my attention to the train was some one screaming 'There comes the train.' I do not know what I did then. I heard some one halloo at me, then I looked up and glanced at the train. I do not know whether I heard any one halloo for me to get off or not. I do not know whether I heard them halloo for me to jump or not. * * * I was scarced so bad I did not know what I was doing. I did not see the train until they hallooed and I was scared so bad I did not know what I was doing. I think I turned to town; I do not know what I did. I testified before (former trial) that 'I did not see the train until

they told me that it was coming, and I looked up and saw it.' I testified that on the former trial and it is true. I do not know whether I testified that I turned round and started back. I turned round but I do not know whether I started back or not. It is true that I heard them halloo for me to jump. The reason I didn't jump was I was scared so bad I did not know what I was doing. I do not know why I turned round and went toward the other end of the bridge. I guess I did that because I thought I could get back to the other end. I do not know what I thought, and therefore could not say whether I thought I could get back to the other end of the bridge or not. I don't remember testifying before that I thought I could get back without jumping off. If I hadn't been scared so bad I would have jumped off, but I did not know what I was doing. I do not know what made me run back toward the other end of the bridge. I did not know I was running. It was the train that frightened me, and I knew I was in danger. I knew that if I did not jump off or get off I was liable to get hurt. If I did not get off I knew I might get hurt."

As before stated, at the time she was injured she was less than 11 years old. She was possessed of the ordinary intelligence of children of her age. When suddenly confronted with imminent peril a person sui juris often fails to avail himself of the surest means of averting the threatened danger, and such person is not necessarily guilty of contributory negligence because of such failure. It is well settled that in determining the question of contributory negligence the age and intelligence of the person charged therewith must be considered. Applying this rule to the evidence above stated, we think the jury were warranted in finding that Pearl Bolton should not be held guilty of contributory negligence in failing to jump from the trestle when she discovered the approaching train. Evansich v. Railway Co., 57 Texas, 128; Houston & T. C. Ry. Co. v. Boozer, 70 Texas, 537; Gulf C. & S. F. Ry. Co. v. McWhirter, 77 Texas, 360.

At the time the operatives of the train first saw the children upon the trestle the train was from 200 to 1000 feet distant therefrom. The train was equipped with Westinghouse quick automatic air brakes, and said brakes were in good condition. The fireman testified that when he first observed the children on the bridge two or three of them were jumping off and he supposed that he "held up four or five seconds, thinking they would all get off, and then told the engineer to stop the train." The train ran about 230 feet after the fireman discovered the children on the track before any effort was made to stop it or lessen its speed. Several expert witnesses testified for plaintiff that a train of same number of cars equipped with similar brakes, running at the rate of speed and upon a track of the same grade as the train in question, could have been stopped in a distance of from 500 to 525 feet.

From this testimony it appears that if the brakes had been applied

as soon as the firemen discovered the children on the trestle the train could have been stopped before it reached Pearl Bolton and she would not have been struck. There is also evidence to the effect that an emergency application of the brakes would have caused a disturbance of the passengers upon the train by unseating them and throwing them forward. The only passenger upon the train who testified in the case stated that the train was stopped gradually, just as a train is generally stopped at a station, and the manner in' which it was stopped produced no effect upon the passengers.

We think this testimony is sufficient to sustain the finding of the jury that the operatives of the train after they discovered the peril of Pearl Bolton failed to use every means in their power consistent with the safety of those upon the train to avoid injuring her.

The place at which the accident occurred was within the corporate limits of the city of Tyler, which city is incorporated under the general laws of this State. The corporate limits of said city embrace an area of three miles square and it has a population of 8000 or 10,000. None of the streets of said city are open across appellant's road north of the place of the accident, and appellant's right of way is fenced through that portion of the city just as it is in the country. That portion of the city is sparsely settled, but there are houses on either side of the railroad and a considerable part of that section of the city has been laid off in blocks, lots and streets. Appellant's roadbed at the place of the accident was frequently used by pedestrians. Plaintiff, over the objection of defendant, introduced in evidence an ordinance of the city of Tyler limiting the rate of speed of all locomotives and cars oper- ated within the city limits to six miles an hour, and making the violation of said ordinance an offense punishable by a fine of not less than $25 nor more than $100.

The evidence shows that at the time the operatives of the train dis- covered Pearl Bolton and her companions upon the trestle said train was running at a speed of forty or forty-five miles an hour.

The appellant objected to the introduction in evidence of the ordi- nance above mentioned on the ground that it was unreasonable and therefore void. This objection having been overruled and the ordi- nance admitted, appellant requested the court to charge the jury that it was not negligence on the part of appellant's employes to run the train at the time and place of the accident at a greater rate of speed than six miles an hour. The action of the court in refusing to give this instruction and in not sustaining appellant's' exception to the in- troduction in evidence of said ordinance is assailed by the third and fourth assignments of error.

The Legislature having expressly delegated to the city council of the city of Tyler the authority to regulate the speed of trains operated within the limits of said city, there is strong reason and authority for holding that the judgment of the council in fixing such rate of speed

is conclusive, and the reasonableness of the ordinance can not be inquired into by the courts. Rev. Stats., art. 460; Coal Float v. City of Jefferson, 112 Ind., 15; Ex parte Chin Yan, 60 Cal., 78.

It is unnecessary, however, for us to decide this question, as there is nothing in the evidence to authorize the holding that there is anything unreasonable in the ordinance or in its application to that portion of the city of Tyler in which the accident in question occurred. There is no evidence indicating that the observance of the ordinance by appellant would in any way interfere with the proper operation of its trains and the proper discharge of its duty to the public; on the contrary, the rules voluntarily adopted by appellant to govern its employes in the operation of its trains forbid the running of trains within the corporate limits of the city of Tyler at a greater rate of speed than six miles an hour.

The fifth, sixth, seventh and eighth assignments of error, complaining of portions of the court's charge and of the refusal of the court to give special instructions requested by appellant, are all based upon the proposition that Pearl Bolton was a trespasser upon appellant's track and therefore appellant owed her no duty in the operation of its train, until her peril was discovered by the operatives of the train. No complaint is made by the appellant in regard to the manner in which the issue of contributory negligence on the part of Pearl Bolton in going upon the trestle was submitted to the jury, nor is the finding of the jury upon that issue questioned. The contention is that appellant was not required to use any care to discover Pearl Bolton upon its track, and that however negligent it may have been in the operation of its train or however free from contributory negligence Pearl may have been in going upon the trestle, it can only be held liable for the negligence of its employes occurring after they discovered the child's peril.

We can not agree with appellant's counsel in this contention. There is evidence to the effect that there was a great deal of travel by pedestrians along that portion of appellant's road on which the accident occurred, and it is not shown that any objection or protest were ever made by appellant against such use of its track. Under this evidence the jury may have found that Pearl Bolton was not a trespasser in going upon appellant's track at the place and under the circumstances shown by the evidence.

But conceding for the sake of argument that the injured child was a trespasser, still the appellant owed her the duty to use reasonable care in the operation of its train and to discover her presence on its track. If appellant operated its train in a negligent manner, or negligently failed to keep a proper lookout to discover persons on its track, it would be liable to any person injured by such negligence who was not guilty of contributory negligence. Ordinarily the fact that such injured person had no right to be upon the track would be such evidence of contributory negligence on his part as would prevent his recovery,

but this is not necessarily so, especially when the person so injured is a child. As before stated, the finding of the jury in the present case that Pearl Bolton was not guilty of contributory negligence in going upon the trestle is not challenged by the appellant. Houston & T. C. Ry. Co. v. Sympkins, 54 Texas, 615; Texas & P. Ry. Co. v. Watkins, 88 Texas, 24; Texas & P. Ry. Co. v. Stagg, 90 Texas, 461; St. Louis S. W. Ry. Co. v. Shiflet, 94 Texas, 131, 56 S. W. Rep., 697.

By cross-assignments appellee asks a reversal of the judgment of the court below because the court erred in his instructions to the jury as to the elements of damage for which appellee was entitled to recover, and because the amount of damages found by the jury is grossly inadequate. The charge complained of is as follows:

"And in ascertaining and deciding upon such amount of compensation, if you find for plaintiff, you may take into consideration the nature and extent of such injuries, if any, and any physical or mental pain, if any, which you may find from the evidence said Pearl Bolton has suffered as the direct and proximate result of such injuries."

This charge contains no affirmative error. It merely omits to submit to the jury one of the elements of damage for which appellee might have recovered. Having failed to request a special instruction supplying this omission appellee can not be heard to complain of the charge as given.

The physician who treated Pearl Bolton testified: That one of her legs was about two inches shorter than the other, and that there was an opening in her skull where a portion of it had been removed, on the right side of the forehead and about the size of a half dollar; that the only covering over the brain at that place was the skin and membrane which covers the brain. The pulsation of the brain can be seen through the opening. There is danger to the life of a person in such condition. She might go through life without any ill effect from it, but it leaves an exposed place in the brain and there is no bony protection there. If she received a blow at that place which penetrated, the probabilities are that the effect would be death. If the fractured bones had not been removed the result would have been epilepsy or insanity and probably death. The probabilities of that have been lessened by the operation performed on her head. The choking sensation in the throat which she complains of from pressure on the wound is caused by a nervous connection between the brain and the throat and is liable to produce any nervous feeling. If pressed upon strong enough it would probably produce convulsions. There was a probability of there being bony growth from the broken edges of the bone which might produce nervous disorders or epilepsy, but it is not probable in this case. A fracture of the skull will produce epilepsy and fits and such disorders can be traced back to an old injury; that is, a child may receive an injury to the head and it develop later, after they are grown. Headaches and pains are symptoms of nervous disorder; they are premon-

itory symptoms of spasms and epilepsy. One may have these symptoms for months without having epilepsy. In his opinion the chances are against such a result in this case. Both of her injuries were permanent and lifelong.

While this testimony, which is undisputed, would have sustained a verdict for a larger amount than that found by the jury, we can not say that the amount found by the jury is so inadequate as to indicate that their verdict was due to improper influence, and we are not therefore authorized to disturb their finding.

We are of opinion that the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*