ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. McCAULEY. †

(Court of Civil Appeals of Texas. Jan. 26, 1911. Rehearing Denied Feb. 23, 1911.)

1. RAILROADS (§ 360*)—FRIGHTENING ANIMALS—CARE REQUIRED.

Where a part of a railroad right of way had been used for a public street without objection for 20 years, the railroad company was liable for injuries to a traveler thereon, in consequence of her horse becoming frightened by unnecessary noises of an engine moving parallel with her.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1241–1244; Dec. Dig. § 360.*]

2. RAILROADS (§ 360*)—LICENSEES—CARE REQUIRED.

Operators of an engine on a track, parallel to a part of the right of way used by the traveling public without objection, must not unnecessarily permit the engine to become so enveloped by smoke and steam as to present an unusual appearance so as to frighten a horse driven by a traveler on the right of way.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1241–1244; Dec. Dig. § 360.*]

3. RAILROADS (§ 358*)—LICENSEES—CARE REQUIRED.

An engineer who discovers the peril of a traveler on a part of the right of way commonly used by the public without objection must use the reasonable means at hand to avoid threatened injury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1236; Dec. Dig. § 358.*]

4. RAILROADS (§ 401*)—LICENSEES—INSTRUCTIONS—CARE REQUIRED.

Where traveling on a part of a railroad right of way, commonly used by the public without objection, was not dangerous except as made so by the operation of engines and cars on the track, a charge that if an engineer saw a traveler's dangerous position in time to avoid injury by the use of the means at his command, and he failed to do so, and to avoid an accident to the traveler caused by her horse becoming frightened, the company was liable, was not erroneous as leading the jury to believe that the engineer must do more than use the means at hand.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1382–1390; Dec. Dig. § 401.*]

5. RAILROADS (§ 358*)—LICENSEES—CARE REQUIRED.

A railroad company must exercise due care not to injure licensees whom it knows to be on its right of way and keep a lookout to discover and avoid injury to all who may be expected to be there.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1236; Dec. Dig. § 358.*]

6. RAILROADS (§ 400*)—LICENSEES—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

Whether a traveler on a part of a railroad right of way, used without objection by the traveling public, was guilty of contributory negligence in using the right of way while there were other ways as near, if not as good, held for the jury.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 1377; Dec. Dig. § 400.*]

7. TRIAL (§ 253*)—INSTRUCTIONS—IGNORING ISSUES.

Where, in an action for injuries to a traveler on a part of a railroad right of way used by the traveling public, in consequence of her horse becoming frightened, the refusal to charge that if the way along which plaintiff was traveling was dangerous because of its proximity to the track and was known so to be by the plaintiff, and was chosen by her when she might have chosen another way, there could be no recovery, was properly refused because requiring a verdict against plaintiff, without reference to the issue of discovered peril raised by the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 613–623; Dec. Dig. § 253.*]

8. TRIAL (§ 260*)—INSTRUCTIONS—REFUSAL TO GIVE INSTRUCTIONS COVERED BY THE CHARGE GIVEN.

It is not error to refuse instructions covered by the court's charge so far as they state the law and are warranted by the evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651; Dec. Dig. § 260.*]

9. APPEAL AND ERROR (§ 1002*)—VERDICT—CONCLUSIVENESS.

In determining the issues on conflicting evidence, the jury may look alone to the portion of it favorable to the successful party, and the court on appeal cannot say that such a verdict is not supported by the evidence.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3935; Dec. Dig. § 1002.*]

Appeal from District Court, Hopkins County; R. L. Porter, Judge.

Action by Miss Mattie McCauley against the St. Louis Southwestern Railway Company of Texas. From a judgment for plaintiff, defendant appeals. Affirmed.

E. B. Perkins and Templeton, Craddock, Crosby & Dinsmore, for appellant. C. A. Sweeton and D. Thornton, for appellee.

WILLSON, C. J. Appellant's line of railway ran east and west through Sulphur Springs. Mulberry and Seventh streets, west of appellant's depot, ran north and south. Between them was Johnson's gin lot, the south boundary line of which was marked by a fence running parallel with the track of said railway from Mulberry to Seventh street, a distance of about 227 yards, and was identical with the north boundary line of appellant's right of way. During 20 years that part of said right of way lying between said two streets on the east and west and between said fence and said track on the north and south had been used for the general purposes of a public street and as a public way to and from the city cemetery, situated about 80 yards east of said lot. The width of the right of way at the point specified is not shown by the testimony in the record, but it appears that the part thereof used as a street was about 30 feet from the track of the railway. November 20, 1908, a number of people including appellee, in vehicles drawn by horses, forming a funeral procession, were traveling along said part of said right of way, going west to the cemetery, when employés of appellant in charge of one of its engines ran same along said track from a point east of Mulberry street to a point opposite appellee's place in said procession. The horse appellee was · driving grew restless as the engine moved towards him, and when it reached a point on the track opposite him became unmanageable. As a result appellee was thrown or caused to jump from the buggy in which she was riding, thereby sustaining injury to her person. She recovered a judgment against appellant for the sum of $1,500, her damages as found by a jury. The verdict involved findings that appellant was and that appellee was not guilty of negligence proximately causing the injury she sustained, and that her damages amounted to the sum adjudged in her favor. There was testimony to support such findings, and we adopt them as our own.

In his main charge the court instructed the jury to find for appellee, unless they believed she had been guilty of negligence contributing to the accident resulting in the injury of which she complained, if they believed that "one," quoting from the charge, "of the defendant's engines on its said line of railroad ran up behind and by the side of and in close proximity to plaintiff while she was traveling and driving said horse on said road, street, or highway, and if you further find that while said engine was approaching and was near plaintiff that the engineer in charge, knowing of plaintiff's presence in said buggy being drawn by said horse, if he did, negligently permitted steam or vapor unnecessarily to escape from his engine, or any of the cocks, valves, or places where the same usually escapes, or if you believe that he negligently made any unnecessary use of steam in propelling same, or if by the negligence of the defendant the working part thereof was not properly lubricated, polished, and oiled, and if by the negligence of the defendant said engine was unskillfully operated, as alleged by plaintiff in her petition, and by the use of all or any of such means (if any), the noises thereof (if any), the unusual and frightful appearance thereof (if any), as alleged by plaintiff in her petition, scared the horse being driven by plaintiff and caused it to become unmanageable, as alleged by plaintiff in her petition, and caused plaintiff to be thrown from the buggy in which she was riding and thereby injured the plaintiff, and if you further believe that such negligent acts on the part of the defendant (if any) were the proximate cause of the plaintiff's injuries (if any) as alleged in her petition." The instruction is attacked as being erroneous in several respects. Obviously, it lacks the clearness of statement which should characterize every instruction to a jury, and it has not been without hesitation that we have reached the conclusion that it should not be held to have been erroneous, because calculated to confuse and mislead the jury. It was shown by testimony that the portion of appellant's right of way along which appellee was traveling with the funeral procession had been used for all the purposes of a public street, without objection on the part of appellant, during a period of 20 years. It was also shown that appellant's employés in charge of the engine, while switching cars on another track, at a point some distance east of the place where the accident occurred, discovered the vehicles in the procession, and afterwards ran the engine onto the track parallel with the way the procession was traveling and followed after the procession to the point where the accident occurred. There also was testimony sufficient to support findings by the jury that the engine, as it moved, first towards the procession and afterwards along the track parallel with it, made unnecessary noise and unnecessarily emitted steam and smoke. So far as the noise was concerned, it seems to be clear that if it was unnecessary in the operation of the engine, and was due to negligence on the part of the persons in charge of the engine, and if because thereof appellee's horse became frightened, and, as a result of his fright, she was thrown from the buggy and thereby was injured, she was entitled to recover, if she

was herself without fault. Railway Co. v. Belt, 24 Tex. Civ. App. 281, 59 S. W. 611; Puppovitch v. Railway Co., 45 Tex. Civ. App. 138, 99 S. W. 1143; Railway Co. v. Partin, 33 Tex. Civ. App. 173, 76 S. W. 237. We see no reason why she should be denied a right to recover, if, instead of being frightened by the unnecessary noise, the horse was frightened by an "unusual and frightful appearance" of the engine, produced by steam and smoke unnecessarily and negligently caused or permitted to escape from and envelop it. The duty which appellant's employés in charge of the engine owed to appellee was to use such care in the operation thereof as an ordinarily prudent person would have used under the same circumstances, and we think this duty could have been as well violated by unnecessarily causing or permitting the engine to become so enveloped by smoke and steam as to present an "unusual and frightful appearance" to the horse, as it could have been violated by causing or permitting it to make unnecessary noises. If this is true, then the instruction, however lacking it may be in precision, it seems to us, cannot be said to have been erroneous; for its effect was to tell the jury, other conditions specified concurring, to find for appellee if they believed the horse became frightened because of noise, and "the unusual and frightful appearance" of the engine, and further believed that such noise and appearance of the engine were the result of negligence on the part of appellant's employés in particulars specified.

The court in his main charge, further instructing the jury, told them to find for appellee although they believed she was guilty of contributory negligence, if they also believed from the evidence that the engineer in charge of the engine "actually saw and knew of plaintiff's dangerous position (if she was in a dangerous position) in time to have avoided the injury (if any) by the use of the means at his command," and further believed that he "failed to use all reasonably ordinary efforts at his command, consistent with the safety of his engine, locomotive, and tender, and those riding thereon, to avoid the accident," and further believed "that such failure (if any) on the part of said engineer was the proximate cause of plaintiff's injury (if any)." The objection made to this portion of the charge is that it was misleading in that it required the engineer to "use all the means at his command to avoid the accident, if he saw and knew of her dangerous position, when she was in a dangerous position from the time she entered the way where it ran over defendant's premises," and that she "being at most a mere licensee thereon, the engineer was not required to use all the means at his command to avoid the accident, at least until after he saw and knew from the actions of plaintiff's horse that an accident

was imminent." It did not appear that the way appellee was traveling was dangerous, except as it might be made so by the operation of appellant's engines and cars along its track parallel with same. The peril arose, not because of the way, but because of the operation of the engine. When the engineer discovered that she was in peril on account of the operation of the engine, it became his duty to use the means at hand to avoid the injury threatened to her, and we think the jury reasonably could not have understood the instruction to mean otherwise. Therefore we do not think the instruction, in the particular pointed out was erroneous.

At the request of appellee, the court instructed the jury that if the way along which appellee was traveling at the time she sustained the injury complained of had been "commonly and publicly used by persons in traveling in vehicles drawn by horses to and from the city cemetery, * * * with the knowledge, consent, permission, or acquiescence of the defendant," it was appellant's duty "in operating and propelling its engines while approaching and passing said road, street, or highway to have exercised ordinary care in the operation and control of its said engine, so as not to endanger the persons known to defendant's servants and agents to be using said road, street, or highway, even though you believe said road, street or highway ran along and upon defendant's right of way." Appellant insists that persons traveling on and along the used way on its right of way were mere licensees, and that as to licensees it had "the absolute right to operate its engines and trains on its track by the side of the said way in the usual and customary manner, even though the safety of such travelers is endangered thereby, and defendant is under no duty to use such care in the operation of its trains as not to endanger the safety of such travelers." We do not agree that the law is as appellant asserts it to be. To say that a railway company owes no duty to use care in the operation of its trains not to injure persons whom it knows to be on its right of way and whom it has licensed to be there, would be to impute to the law the lack of a humaneness which ought to be one of its chief characteristics. There is ample authority for saying the law in this particular is not justly subject to such an imputation. "If a railroad company," says Judge Elliott, "licenses or acquiesces in the use of its track or premises by others, it must exercise reasonable care not only to avoid injuring them after they are discovered to be in danger, but also to keep a careful lookout to discover and avoid injury to all who may be expected to be upon their right of way or premises." 3 Elliott on Railroads, § 1250, citing as supporting the statement, among other cases, Railway Co. v. Bolton, 36 Tex. Civ. App. 87, 81 S. W. 123, and Railway Co. v. Lee, 34 S. W. 160. Speaking further with reference to the duty of

such companies to licensees and trespassers on their premises, Judge Elliott says: "It is a sound and wholesome rule of law, humane and conservative of human life, that without regard to whether the person killed or injured in the particular case was or was not a trespasser, or a bare licensee upon the track of the railroad company, the company is bound to exercise special care and watchfulness at any point upon its track, where people may be expected to be in considerable numbers, as, for example, in a city where the population is dense; even between streets where the track has been extensively used for a long time by pedestrians; or where the roadbed is constantly used by pedestrians; or at a bridge in a thickly settled community, which the public, in considerable numbers, have used for years. At such places the company is bound to anticipate the presence of persons on the track, to keep a reasonable lookout for them, to give warning signals, such as will apprise them of the danger of an approaching train, to moderate the speed of its train so as to enable them to escape injury; and a failure of duty in this respect will make the railway company liable to any person thereby injured, subject of course to the qualification that his contributory negligence may bar a recovery." 3 Elliott on Railroads, § 1726; Ry. Co. v. Sanders, 42 Tex. Civ. App. 545, 94 S. W. 149.

It was shown that there were other ways as near, if not so good, as the one chosen by appellee, by which she could have reached the cemetery without traveling along appellant's right of way at the point thereon where the accident occurred. The court refused to instruct the jury as requested by appellant to find for it, if they believed the way along which appellee was traveling was dangerous because of its proximity to appellant's track, and was known so to be by appellee, and was chosen by her when she might have chosen another and safe way to the cemetery of about the same distance. We think the instruction properly was refused. Without respect to the circumstances which induced her to travel the way she was traveling at the time she was injured, appellee could not be said to be guilty of negligence barring a right she otherwise would have had to recover, because that way, within her knowledge, was a dangerous one, and she could have traveled another and safe way. Whether appellee was guilty of negligence in traveling along the way she was traveling or not was a question for the jury to determine with reference to the circumstances surrounding her as shown by the testimony, and was not a question the court had a right to determine as a matter of law. In his main charge the court instructed the jury to find for appellant if they believed "an ordinarily prudent person situated as plaintiff was, while going and traveling from the residence of her father to the cemetery, would not have traveled the road or street traveled by plaintiff, but would have traveled some other route." This instruction, we think, was as favorable to appellant as the testimony warranted. Railway Co. v. Matthews, 100 Tex. 63, 93 S. W. 1068; Railway Co. v. Wall, 102 Tex. 362, 116 S. W. 1140; Railway Co. v. Wall, 110 S. W. 457. We think the requested instruction properly was refused for another reason. It required the jury to find against appellee if they believed she chose a way she knew to be dangerous, when she might have chosen another and safe way, without reference to the issue of "discovered peril" made by the evidence. There was testimony sufficient to support a finding that the engineer as he approached the point opposite the place where the accident occurred became aware of the fact that appellee's horse was frightened, and that her situation because of that fact was a perilous one, and that thereafterwards said engineer not only failed to use the means at his command to so manage the engine as to avoid further frightening the horse, but so operated said engine as to cause or permit it to continue to make unnecessary noise, and unnecessarily to emit smoke and steam in a manner calculated to, and which did, add to the fright of the horse.

The action of the court in refusing to give to the jury other special instructions requested by appellant is assigned as error. So far as these instructions correctly stated the law and were warranted by the testimony we think they were in effect given in the court's main charge.

The assignment attacking the verdict as unsupported by the testimony, in that the testimony showed appellee, and failed to show appellant's engineer, to have been guilty of negligence, is overruled, as is also the one attacking the verdict and judgment as excessive. The evidence was conflicting. Looking alone to the portion of it favorable to appellee's contentions, as the jury had a right to do in determining the conflict, we cannot say that it was insufficient to support the findings complained of.

The judgment is affirmed.