ST. LOUIS SOUTHWESTERN RY. CO. OF
TEXAS v. WATTS et al.
(No. 1377.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 28, 1915. Rehearing Denied Feb. 25, 1915.)

1. RAILROADS ☞367—OPERATION OF TRAINS —CARE REQUIRED—LOOKOUT.

Trainmen must at all times exercise a proper degree of care in keeping a lookout to discover ·persons and objects in any situation on the track, and a failure so to do makes the railroad company liable for injury to a person on the track unless he was guilty of contributory negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1257, 1258; Dec. Dig. ☞367.]

───────────

**2. RAILROADS ⬤⇒398—OPERATION—LOOKOUT —NEGLIGENCE—EVIDENCE.**

In an action for the death of a person run over by an engine, evidence *held* to support a finding of negligent failure to keep a proper lookout.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1356, 1358–1363; Dec. Dig. ⬤⇒398.]

**3. RAILROADS ⬤⇒396—OPERATION—LOOKOUT —NEGLIGENCE—EVIDENCE.**

Where a person on a track was run over because of the failure of trainmen to keep a proper lookout, the company, to escape liability, must show that the person was guilty of negligence proximately causing the accident.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1341–1343, 1357; Dec. Dig. ⬤⇒396.]

**4. NEGLIGENCE ⬤⇒58—"PROXIMATE CAUSE" —WHAT IS.**

Before an act or omission is the "proximate cause" of an injury, the injury must be the natural and probable result of the act or omission; for one is not responsible for the consequences of an act not reasonably foreseen.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. § 71; Dec. Dig. ⬤⇒58.

For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

**5. RAILROADS ⬤⇒389 — INJURIES TO PERSON ON TRACK — CONTRIBUTORY NEGLIGENCE — PROXIMATE CAUSE.**

The negligence of one in jumping from a moving train and falling injured on a track is not the proximate cause of his death by being run over by an engine while remaining on the track, unable to leave it because of his injuries, but his falling on the track was the result of accident, and the railroad company, guilty of negligent failure to properly keep a lookout while operating the engine, was liable for his death.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1319–1323; Dec. Dig. ⬤⇒389.]

**6. RAILROADS ⬤⇒369 — INJURIES TO PERSON ON TRACK—TRESPASSER.**

One negligently jumping from a moving train and falling on a track, so injured as to be unable to leave the track, is not a willful trespasser, and the company owes to him the duty of a proper lookout.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1259–1262; Dec. Dig. ⬤⇒369.]

Appeal from District Court, Bowie County; H. F. O'Neal, Judge.

Action by Mrs. Nannie Watts and others against the St. Louis Southwestern Railway Company of Texas. From a judgment for plaintiffs, defendant appeals. Affirmed.

Glass, Estes, King & Burford, of Texarkana, for appellant. Smelser & Vaughan and Mahaffey, Thomas & Hughes, all of Texarkana, and R. M. Hubbard, of New Boston, for appellees.

HODGES, J. On the night of July 7, 1912, John C. Watts, the husband of the appellee Mrs. Nannie Watts, and the father of the other appellees, was killed in the yards of the appellant at Texarkana, Tex., under the following circumstances: His daughter desired to go to Palestine, Tex., and he accompanied her to the Union Station at Texarkana to assist her in taking passage on the south-bound Texas & Pacific train due to leave some time after 1 o'clock in the early morning. He boarded this train with his daughter for the purpose of securing for her a berth in a sleeping car, but before he had concluded his arrangements with the Pullman conductor the train began to leave the station. The Pullman conductor testified:

"When I first learned what Mr. Watts intended to do the train was then moving. I immediately started to the vestibule at the front end of the car. Mr. Watts followed me on the platform. The porter had closed the vestibule door. * * * I told Mr. Watts to wait and I would go and get the train conductor and stop the train for him. I last saw Mr. Watts standing on the platform of the second car, where I told him to wait until I could get the train conductor. * * * I went for the train conductor as hurriedly as I could, * * * and after returning with the conductor where I had left Mr. Watts he was gone, and I did not see him any more. The conductor and I looked through the cars for him, and could not find him. On returning with the conductor, I found the vestibule door open where Mr. Watts had been standing."

The Texas & Pacific train, in passing out from the Union Depot, moved in a southwesterly direction, and gradually turned still farther toward the south, crossing the main line and one or more switch tracks of the appellant before leaving the railway yards. Shortly after this train had left, a switch engine belonging to the appellant, which had been standing east of this crossing of the railroads, moved west some distance, passing over the Texas & Pacific track. It was then switched onto another one of the appellant's tracks a few feet further south, and started toward the east again. When within a few feet of the Texas & Pacific track the body of a man, afterwards identified as that of John C. Watts, was discovered on the appellant's track about six feet in front of the end of the tender of this switch engine. This switch engine was backing, and across the rear end of the tender was a running board, on which several of the appellant's employés were standing at the time, but it seems that none of them discovered Watts in time to avoid a collision. The engine passed over his body, and he expired a few seconds later. E. M. Holliday, one of those employés, thus describes what occurred:

"I was standing on the footboard of engine No. 90 at the time it was approaching the place or the track where John C. Watts was lying just before he was struck by said engine No. 90. When I first saw him he was lying on the track, apparently raised up on his elbows. I cannot say whether his face was up or down. * * * He was between the rails when I first saw him. * * * When I first saw the deceased I was about six feet from him. I called to him when I first saw him, and said, 'Get out of the way!' He didn't say anything, but turned and looked at me. He was lying in between the rails, propped up on his elbows. The engine was backing up at the time. There were no headlights there except the headlight. The place where deceased was killed was very dark, except the light from the lanterns of the crew. Just a short distance—something like 20 feet from the place where the accident occurred—we had stop-

---

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ped the engine and picked up J. A. Wood, switchman, and Bert Heddon, switchman. There was no alarm. The yard was quiet, and no one was making any alarm or noise."

Another switchman testified that about the time the collision occurred he heard some one in that direction cry out as if in pain. A. L. Scott, a witness for the defendant, testified that at the time this injury occurred it was his business to let trains in and out of the yard at Texarkana to place engines on and take them off, and arrange switches for trains to leave town and come into town on. He thus testified as to what he observed that night:

"I gave the high-ball signal that night, and the train passed me. As the train passed me I saw an elderly gentlemen standing on the bottom steps of the International & Great Northern coach, sometimes termed a 'chair car' by the employés, but I rather think it was an International & Great Northern coach. It was the third car from the rear end of the train. This gentleman was standing with his left hand on the grabiron, facing towards the engine. He had on glasses. * * * He was wearing a white hat. The two cars behind the car that he was on were International & Great Northern Pullman cars—sleepers, I term them—Pullman sleepers. He was on the lower steps of the car, with his left hand on the grabiron, facing the front of the engine, the way the train was going. I judge that the train was moving between 8 and 10 miles an hour. I saw him again on the train as the train was passing me. After the train passed me he made an effort to turn, as though a man in the act of getting off of the train. He turned his back toward me that way, as though making an effort to get off the train, in the act of swinging, like an ordinary man would get off of a train. * * * I then walked toward the Cotton Belt tracks, over the track that comes from the Union Station, to see further around the curve, and the last I could see of him was his hatbrim as he rounded the curve. He was then still on the train. * * * By that time their speed would have increased, I believe, to about 12 or 14 miles an hour in that distance. I did not have occasion to see him any more after he rounded the curve."

Dr. E. M. Watts, a son of the deceased, testified as follows:

"When I first saw the body it was at the East Undertaking Company. I did not make an examination of the body. I examined the skull and his hands. When I got to the undertaking establishment he was there covered up all except his hands and the upper part of his body. I did not examine the lower extremeties, but did examine his head and his hands, and his hands showed that he had been pushed around in the cinders. The skin was slightly torn. It was just an abrasion, you understand. The skin was torn, but there was not any cut or anything like that, and his hands were dirty. He had a gash across his forehead, probably six or seven inches long. It seemed to be a cut when I first examined it. I did not find any fracture, and am sure there was none. I looked for that particularly. The wound on the head was what would be called a scalp wound. It was not such a wound as, in my opinion as a physician, would ordinarily cause death. It would have a tendency to daze a man temporarily; it would stun him."

This suit is by the surviving wife and children of John C. Watts to recover damages occasioned by his death, and this appeal is from a judgment in their favor for the sum of $10,000. The petition charged negli-

gence on the part of the appellant's employés in failing to keep a proper lookout to discover the presence of John C. Watts upon the track, and in failing to exercise proper care to stop the engine after they discovered his presence upon the track and in a place of danger. The latter ground, however, was abandoned, and the issue of negligence based upon the failure to keep a proper lookout to discover the presence of the deceased upon the track was the only one submitted as a basis of recovery.

There was testimony sufficient to justify a finding by the jury that the appellant's roadbed and track at the place where the accident occurred had been commonly used as a footpath, both in the daytime and at night, for a number of years, under circumstances which were reasonably calculated to charge the employés with a knowledge of such use. The court gave to the jury the following as a portion of his main charge:

(1) "The court instructs you that the first question in this case for you to determine is: Was the death of the said John C. Watts caused by his being struck and run over by a switch engine of the defendant's? Now, if you believe from the evidence that at the time John C. Watts was struck and run over by a switch engine of the defendant he was already dead, or that he had previously received injuries in getting off a Texas & Pacific train which would have caused his death, then, if you so find, you will return a verdict for the defendant, without considering any other issues in this case."

The main issue was thus submitted:

(6) "Now, if you find from a preponderance of the evidence that on or about the 7th day of July, 1912, the deceased, John C. Watts, was struck and run over by a switch engine of the defendant, in the city of Texarkana, Tex., and that his death was thereby caused, and you further find that at the time he was thus struck and run over the said John C. Watts was on a part of one of the defendant's tracks in said city, which was then, and for a long time theretofore had been, with the knowledge and consent or acquiescence of the defendant, commonly and customarily used by persons at all times of the night as a footpath; and that the servants of the defendant operating and riding on said switch engine knew, or, by the use of ordinary diligence, could have known, of such use, and you further find from a preponderance of the evidence that the said John C. Watts, on account of injuries previously received, did not realize or know the danger incident to being or remaining on such track, or that, on account of such injuries, he was unable to remove himself therefrom, and you further find from the preponderance of the evidence that the servants of the defendant riding upon and operating such switch engine could, by the exercise of ordinary care, have discovered the presence of said John C. Watts on said track, and could, by the exercise of such care, have avoided striking him with such switch engine, and that such servants of the defendant failed to use such care, and that such failure, if they so failed, was negligence, as that term has been defined herein, and that the death of said John C. Watts was caused by such negligence, if any, and if you further find from the evidence that the plaintiffs or any of them suffered pecuniary loss on account of the death of said John C. Watts, then, and if you so find, you will return a verdict in favor of such of the plaintiffs as you may find, under other parts of this charge, suffered pecuniary loss on account of the said John C. Watts' death."

[1] The substance of the appellant's contention on this appeal is: First, that even if its track at the place where the accident occurred was used as a highway by pedestrians, the undisputed evidence shows that the deceased was not making that use of the premises, and for that reason its employés did not owe him the duty of exercising ordinary care to discover his presence upon the track; second, that the evidence raised the issue of contributory negligence on the part of the deceased in alighting from the Texas & Pacific train while it was still in motion, and that this issue should have been submitted to the jury. The proposition is announced that the employés in charge of railway locomotives were under no duty to discover persons who were making an unlawful use of its track, or a use which they were not notified would probably be made. It may now be considered as definitely settled in this state that those in charge of railway locomotives do rest under the duty at all times to exercise a proper degree of care in keeping a lookout for the purpose of discovering persons and objects in any situation on the track, and that, when a failure to exercise this watchfulness results in an injury to a person on the track, a recovery can be defeated only by showing that the injured party was himself guilty of negligence which was the sole or a concurring cause of the injury. Railway Co. v. Sympkins, 54 Tex. 615, 38 Am. Rep. 632; Texas & Pacific Ry. Co. v. Watkins et al., 88 Tex. 23, 29 S. W. 232; M., K. & T. Ry. Co. v. Hammer, 34 Tex. Civ. App. 354, 78 S. W. 708; St. L. & S. W. Ry. Co. v. Bolton, 36 Tex. Civ. App. 87, 81 S. W. 123; T. & P. R. R. Co. v. Roberts, 2 Tex. Civ. App. 111, 20 S. W. 960; T. & P. Ry. Co. v. Staggs, 90 Tex. 461, 39 S. W. 295.

In the Sympkins Case, referred to above, the injured party had gone on the track of the railway company, and while there had fallen in a fit, and was thereafter run over and killed. In disposing of the question of liability, the court said:

"We do not assent to the proposition that a railroad company may not become liable to one who is run over and injured by reason of the want of watchfulness of its servants, although such person may have been originally a trespasser on the track. If a party be wrongfully on the track under such circumstances, or, being there, acts in such a way as to be himself a proximate cause of his injury, he will be precluded from recovery on grounds of public policy, as being himself guilty of contributory negligence. Although the company's agents may have failed in proper watchfulness, the injured person is regarded as being himself too directly a cause of the injury to be allowed to complain. * . * * We prefer that line of decisions holding railroads bound to exercise their dangerous business with due care to avoid injury to others, as correct in principle and sound in policy, and as protecting even a trespasser who is not guilty of contributory negligence."

Associate Justice Denman, in rendering the opinion in the Watkins Case, said:

"The true rule is that it is the duty of the servants of the railroad company operating its trains to use reasonable care and caution to discover persons on its track; and a failure to use such care and caution is negligence on the part of such company, for which it is liable in damages for an injury resulting from such negligence, unless such liability is defeated by the contributory negligence of the person injured or of the person seeking to recover for such injury, and the circumstances under which the party injured went upon the track are merely evidence upon the issue of contributory negligence."

[2] The evidence in this case justifies a finding by the jury that a proper lookout to discover the presence of persons and objects on the track was not kept by the appellant's employés in charge of the switch engine that caused the death of John C. Watts; and it also justifies the further conclusion that, had ordinary care been exercised in that respect, the accident could, by the exercise of proper care, have been averted.

[3] It follows from the rule announced in the cases cited that, if the death of John C. Watts was brought about under those conditions, the appellant, in order to escape liability, must show that Watts was himself guilty of negligence which may be considered the proximate cause of that result. The trial court held that the evidence was not such as to raise the issue of contributory negligence, and formulated his charges accordingly; and, in addition to this, he refused a special charge presented by the appellant requesting that this issue be submitted. The different assignments assailing these rulings of the court present the principal questions involved in this appeal.

[4, 5] The only conduct attributed to the deceased which is relied on as constituting negligence is his alighting from the Texas & Pacific train while it was in motion. It is contended that, had he not done this, the injuries here complained of would never have been inflicted. That this conduct was a link in the chain of casual events which culminated in the unfortunate tragedy cannot be denied. But the same may be said of his going upon the train to assist his daughter in securing a berth in the sleeper and remaining there till after the train started. And we might push the analysis still further backward, and say that the accident would not have occurred had deceased not gone to the depot on that night. Hence the mere fact of conduct being a link in the causal chain is not sufficient; it must be the proximate cause. In T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162, our Supreme Court discusses the subject of proximate cause, and lays down this rule:

"It is usually laid down in cases of negligence that, in order to constitute the proximate cause of an injury, the injury must be the natural and probable result of the negligent act or omission. Since every event is the result of a natural law, we apprehend the meaning is that the injury should be such as may probably happen as a consequence of the negligence, under the ordinary operation of natural laws."

After quoting Bacon's definition of proximate cause, the court continues:

"But it seems to us, * * * as applied to the law of negligence at least, a better ground

for the rule is, that a party should not be held responsible ·for the consequences of an act which ought not reasonably to have been foreseen."

Keeping that definition in mind, can it be said that, under the evidence adduced, John C. Watts, in alighting from the moving train, should have anticipated that he might be injured in a collision with one of the appellant's locomotives or cars? The question is not answered by saying that he should have anticipated being injured or killed by the fall. This suit is not founded upon those injuries, but upon injuries resulting from an entirely different cause and occurring under different conditions. In order to fix negligence upon the deceased, we must find, not only that he should have anticipated being injured in alighting from the train as a result of its rapid motion, but that he also should have anticipated that he would alight upon the appellant's track, and that his injuries would be of such a character as to render him unable to move away from that situation, or to make his presence known, and that he would finally be run over by a passing locomotive or car. We can no more presume negligence on the part of an injured party in such instances than we can presume negligence in the party inflicting the injury. In each case the negligence relied on must be proved, whether it be the ground of an action or the basis of a defense. In determining what a reasonable person should expect or anticipate as a natural and probable result of a course of conduct, we must view that conduct in the light of the circumstances surrounding such person at the time he acts. This occurrence took place in the night. Appellant's employés say it was very dark at the time the engine ran over the deceased, and this must have been only a few minutes after he alighted from the train. The only evidence which tended to contradict this statement was the testimony of Miss Lizzie Watts, the daughter whom the deceased accompanied on the train that night. She says that when they left home near 12 o'clock a half moon was shining; that previous to that time it had been raining some. There is no evidence that the deceased knew anything about the location and arrangement of the railroad tracks at that point, further than what he might have observed in the darkness as he was getting off. Evidently his purpose was to alight from the train before it got too far away from the station, and not to alight at any particular spot, or among railroad tracks. His falling at that point may be regarded as the result of accident, rather than of design. Doubtless the momentum communicated by the motion of the train carried him some distance beyond where he first struck the ground. Such would be

173 S.W.—58

the natural and probable consequences of alighting under those conditions.

[6] He was not, therefore, in the attitude of a willful trespasser upon the appellant's track, even if the track were not used under conditions which implied permission on the part of the railway company. When deceased fell upon the track he was not then in a place of danger. Had he not been rendered unable to move, he might, and doubtless would, have extricated himself from that situation before any collision could occur. His remaining upon the track until run over by the engine was the real cause of the injuries for which this suit is brought. Certainly remaining upon the track under those circumstances could not be treated as negligence. His helpless condition, produced by what may be termed accidental injuries, was the intervening and immediate cause which broke the responsible connection in the chain of events. In T. & P. Ry. Co. v. Staggs, supra, Justice Brown used this language:

"If the deceased was not guilty of negligence in being or remaining [italics ours] upon the track of the defendant's railroad, and if the employés of the railroad company failed to use such care as a person of ordinary prudence would have exercised under that condition, to discover his presence upon the track, the widow and children of deceased would be entitled to recover for his death, if caused by such negligence of the railroad company."

That language is applicable here, and should determine the disposition of this appeal.

Counsel for appellant seeks to apply the rule laid down in cases where the injured party had gone to sleep on the tracks, either voluntarily or under the effects of intoxicants. The dissimilarity between those conditions and the circumstances of this case is too manifest to be overlooked. In each of those conditions the injured party is presumed in law to have voluntarily remained on the track till injured. A person who becomes insensible as the result of intoxication is in law regarded in the same light as one having the possession of his faculties in determining the degree of care he should exercise for his own safety. He will not be permitted to urge as a defense a condition superinduced by conduct upon which society looks with so much disfavor as the excessive use of intoxicants. See notes to Little Rock Ry. & Elec. Co. v. Billings, 19 Ann. Cas. 1173.

Our conclusion is that the evidence did not in this case raise the issue of contributory negligence, and the court did not err in refusing the special charge requested, or in failing to make the qualifications of his main charge referred to in the appellant's assignment of error.

The judgment of the district court will therefore be affirmed.