### TEXAS & P. RY. CO. v. GIBSON.
### (No. 3153.)

(Court of Civil Appeals of Texas. Texarkana. Jan. 27, 1926. Rehearing Denied March 11, 1926.)

1. Negligence ⬅️101—Contributory negligence of employé merely reduces recovery, under federal act (U. S. Comp. St. § 8659).

In action for death of employé of an interstate carrier due to its negligence, contributory negligence of deceased will not bar recovery, in view of U. S. Comp. St. § 8659; its effect being merely to diminish amount recoverable.

2. Master and servant ⬅️286(31) — Whether failure to ring bell or sound whistle was negligence as to railroad bridge tender held for jury.

In action for death, where deceased bridge tender was struck by a car and engine engaged in switching, held, jury might have found that failure of trainmen to ring bell or sound whistle to attract his attention constituted negligence.

3. Master and servant ⬅️286(31)—Negligence in failing to keep lookout for railroad bridge tender held for jury.

In action for death, where deceased bridge tender was struck by a car and engine engaged in switching, near approach to bridge, held, jury might predicate finding of negligence on failure of trainmen to keep a proper lookout.

4. Appeal and error ⬅️882(12).

Where special charge, contradictory of correct instruction in main charge, was given on request of appellant, he cannot complain.

5. Death ⬅️99(5)—$7,000 for death of man 62 years old, earning $80 per month, held not excessive.

Damages of $7,000 for death, where deceased was 62 years old at time he was killed, was in perfect health, and was earning $79 or $80 per month, practically all of which went to support of widowed sister and her minor daughter, held not excessive.

Appeal from District Court, Marion County; R. T. Wilkinson, Judge.

Action by Barrett Gibson, as administrator of S. L. Jones, against the Texas & Pacific Railway Company. From the judgment for plaintiff, defendant appeals. Affirmed.

Appellant was a common carrier engaged in interstate commerce December 11, 1923, when S. L. Jones, employed by it in such commerce, was run over and killed by an engine and cars then being used in switching operations at and near a point where appellant maintained a drawbridge over a bayou at Platquemine, La. On the theory that Jones' death was due to negligence on the part of employés of appellant in charge of said engine and cars, in that they failed to keep a lookkout for Jones during said switching operations and failed to warn him of the movement of the engine and cars at the time same ran over and killed him, this suit for damages was prosecuted by appellee (as the administrator of Jones' estate) for the benefit of Jones' sister, a widow, and her minor daughter, alleged to be wholly dependent upon him.

It appeared from testimony heard at the trial that the bridge referred to was about 100 feet long. It was in two sections, and was described by a witness as "a jackknife bridge which opened up in the middle and didn't turn." Appellant's main line track and a side track parallel with and about 8 feet south of said main line track ran east and west where they crossed the bridge. Three spur tracks to a lumber shed east of the bridge and south of said side track were connected to the side track by switches; the switch farthest west being about 115 feet east of the bridge. At about 8 o'clock of the morning of the accident employés of appellant in charge of a west-bound freight train, consisting of an engine and 75 or 80 cars,

stopped on the main line track a short distance east of the bridge, and the man in charge thereof signaled to ascertain if the bridge was adjusted for use by the train in passing over the bayou. Jones was, and for about 20 years had been, the tender of the bridge. As such it was his duty to answer the signal. He did so from a point on the bridge where he was standing, advising the trainmen that the bridge was adjusted for such use. Thereupon the train moved west on the main line track and passed over the bridge at a speed of about 6 miles per hour. While the train was so passing, the engine used in switching cars on the side and spur tracks pushed a car west on the side track to a point on the bridge and then back east to the main line track. Directly thereafter Jones was found dead on the side track. His head had been severed from his body and was lying on the ground 8 or more feet east of the east end of the bridge. His body was on the bridge, a short distance from the east end thereof. At the time of the accident the switching was being done in the way it had been the practice to do it; that is, the engine and cars were moved west on the side track to and onto the bridge and east to and onto the main and spur tracks as was thought to be necessary, without a signal from the deceased to do so, and without keeping a lookout for him or in any way warning him of the movements. None of the witnesses saw the accident. When Johnson, the engineer on the west-bound freight train, last saw deceased, he was on the bridge signaling him (Johnson) that the bridge was adjusted for the train to pass on it; when Hay, the conductor of an east-bound freight train, last saw deceased, he had given the signal to Johnson and was standing 50 or 60 feet east of the bridge on the side track; and when Giardince, fireman on the engine pushing the car which (it circumstantially appeared) ran over and killed deceased, last saw him, he had given the signal to Johnson and was walking south from the main line track and had reached the side track, on which the engine was pushing the car toward the bridge. Giardince said that said engine and car at that time were about 1,000 feet east of the bridge. Marks on the ground east of the bridge, where deceased's head was found, indicated that he was struck by the car at that point, and blood and other marks indicated that his body was dragged from that point to the point where it was found on the bridge.

The appeal is from a judgment, based on the verdict of a jury, in appellee's favor against appellant for the sum of $7,000.

Prendergast & Prendergast, of Marshall, J. H. Benefield, of Jefferson, and Bibb & Caven, of Marshall, for appellant.

S. P. Jones and Barret Gibson, both of Marshall, and P. G. Henderson, of Jefferson, for appellee.

WILLSON, C. J. (after stating the facts as above). On the theory that the testimony, did not warrant a finding that it was guilty of actionable negligence, and demanded a finding that the deceased was guilty of negligence which "was the direct cause of his death," appellant requested the trial court to instruct the jury to return a verdict in its favor, and complains here because the court refused to comply with its request.

[1] If appellant was guilty of negligence as charged against it, the fact, if it was a fact, that deceased also was guilty of negligence which was a contributing cause of the accident, was not a reason why appellee should have been denied a recovery; for the only effect of such negligence on the part of the deceased would have been to diminish the amount appellee was entitled to recover. U. S. Comp. St. § 8659.

[2, 3] The debatable question, if there is one, involved in the contention, is as to whether there was testimony raising an issue as to whether employés of appellant in charge of the engine used in the switching operations were guilty of negligence in the respects charged against them in appellee's petition. That said employés did not keep a lookout for the deceased and did not warn him that the engine and cars were approaching the bridge on the side track appeared without dispute in the testimony. Did they thereby violate a duty they owed the deceased? We think the jury had a right to say they did.

Appellant insists to the contrary, and as supporting its view relies mainly on Aerkfetz v. Humphreys, 12 S. Ct. 835, 145 U. S. 418, 36 L. Ed. 758. But that case in its facts was different from this one. It appeared there, and does not here, that the switch engine "was constantly moving (quoting) forwards and backwards, changing cars and making up trains" in the defendant's yards; that at the time of the accident the defendant's employés engaged in the switching operations "could not (quoting further) have moved the cars at any slower rate of speed"; and that—

"The ringing of bells (still quoting) and blowing of whistles on trains going and coming, and switch engines moving forwards and backwards, would have simply tended to confusion."

In this case we think the jury might reasonably have concluded that ringing the bell and sounding the whistle of the engine, instead of operating to confuse deceased, in all probability would have attracted his attention to the approaching engine and cars in time to have enabled him to avoid danger from them. If so, then the jury might have predicated a finding of negligence on the failure of said employés to ring the bell or blow the whistle, or otherwise warn deceased of

the approach of the engine and cars. That the jury might have predicated a finding of negligence on the failure of said employés to keep a lookout for deceased seems to be established by decisions of courts of this state. Railway Co. v. Watkins, 29 S. W. 233, 88 Tex. 20; Ry. Co. v. Bolton, 81 S. W. 123, 36 Tex. Civ. App. 87; Railway Co. v. Watts (Tex. Civ. App.) 173 S. W. 909.

Among other cases than Aerkfetz v. Humphreys, mentioned above, cited by appellant in support of its contention, is Gilmer v. Railway Co. (C. C. A.) 4 F.(2d) 963, where it was held on facts in some respects similar to facts in this case that it appeared as a matter of law that the injury to Gilmer was due to risk he had assumed. As we understand the assignments in appellant's brief, such a question is not presented in any of them.

[4] In the third paragraph of his main charge the trial court instructed the jury, in effect, to find for appellee, other conditions concurring, if they believed employés of appellant engaged in switching cars, without keeping a lookout for the deceased or without warning him that they were doing so, pushed a car on the side track while a freight train was moving over the bridge across the bayou, and further believed that in so pushing the car said employés were guilty of negligence which was proximate cause of the deceased's death. After so instructing the jury the court, at appellant's request, gave them a special charge as follows:

"The jury are charged that under the circumstances of this case there was no duty devolved on the engineer operating the engine in the yards at the time to keep watch or lookout for S. L. Jones, and to warn him of the engine's approach. And it would not be negligence if the engineer, under this circumstance, failed to give warning of the movement of the train towards S. L. Jones."

Appellant insists, and we agree, that the instructions were contradictory of each other, but we do not agree that the instructions in said third paragraph of the court's main charge were erroneous on any of the grounds of the objection urged to them. If they were not, then the fact that they were contradictory of instructions in the special charges is not a reason why the judgment should be reversed. When the instructions in the main charge are correct, the rule applicable denies to an appellant a right to complain of an inconsistency brought about by the giving of special charges requested by him. Ferguson v. Johnson (Tex. Civ. App.) 205 S. W. 512; Railway Co. v. Withers (Tex. Civ. App.) 167 S. W. 5.

[5] It is insisted that the judgment was for an excessive amount. It appeared from the testimony that the deceased, 62 years old at the time he was killed, was in "perfect health" and was earning $79 or $80 per month, practically all of which went to the support of his sister and her daughter. We think the judgment is not so clearly excessive as to require us to set it aside; therefore the contention is overruled.

Other contentions are presented by the assignments, but we think none of them show error entitling appellant to a reversal of the judgment.

The judgment is affirmed.