GARRISON *v.* ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY.

Opinion delivered December 6, 1909.

1.  RAILROADS—CROSSINGS—DUTY TO LOOK AND LISTEN.—The general rule of law is that it is negligence for an adult or a minor having the discretion of an adult, who approaches a railroad crossing, to fail to look and listen for the approach of trains, and it is only in exceptional cases that it is proper to submit to the jury the question whether the failure to look and listen is negligence. (Page 442.)

2.  NEGLIGENCE—MINOR.—The standard for judging the conduct of a minor is not the care and prudence that would be exercised by an adult, but only that of one of his age, intelligence and discretion. (Page 443.)

3.  RAILROADS—NEGLIGENCE OF MINOR.—Where the testimony showed that plaintiff, who was injured at a railway crossing, was a boy of 16 years old and of inferior intelligence, it was error to instruct the jury that plaintiff was negligent as matter of law in failing to look and listen before attempting to cross a track in front of an approaching train; it being a question for the jury in such case. (Page 444.)

4.  SAME—NEGLIGENCE OF MINOR.—Where the evidence shows that plaintiff drove upon defendant's track in front of an approaching train, and that his perilous situation was discovered by the defendant's fireman, who saw from plaintiff's conduct and appearance that he was unaware of the train's approach, it was a question for the jury to determine whether defendant's servants were negligent in failing to give warning signals. (Page 446.)

Appeal from Nevada Circuit Court; *Jacob M. Carter,* Judge; reversed.

This was an action instituted by the plaintiff below, Phil Garrison, by his next friend, against the St. Louis, Iron Mountain & Southern Railway Company for the recovery of damages on account of personal injuries sustained by being struck by a train of defendant while attempting to drive a wagon across its tracks at a public crossing in the city of Prescott, Arkansas. In his complaint he alleged that while he was thus attempting to cross the track at the public crossing "the train came gliding along noiselessly and without warning or blowing its whistle, or ringing its bell, and through the negligence, wilfulness and wantonness of those in charge of the train struck the wagon and threw the plaintiff on the ground, bruising and wounding him on the head, face, side and back and knocking him senseless and unconscious." The defendant denied all acts of negligence on its part; and alleged that if the plaintiff was injured it was on account of his own acts of contributory negligence.

The testimony on the part of the plaintiff tended to prove that on the morning of October 23, 1908, he was driving along a street that runs parallel with the railroad track and about 60 feet distant therefrom. He was in a wagon going south, and in the direction of the depot, and he was attracted towards and intently looking at a large crowd of people who were congregated at the depot. While he was thus driving along this street, the defendant's train approached from the north and at his back; and for a considerable distance the fireman on the train saw him thus driving along the street. When the plaintiff got to the street that crossed over the track, he turned into that street, and then drove over a side track, and on to the main track, and the train struck the rear end of the wagon, knocking the plaintiff out of the wagon and on to the ground. At the time the plaintiff approached the crossing and was attempting to go over it, he did not slacken his progress and did not look or seemingly listen for a train; he did not see the train, but was seemingly entirely oblivious of it, and was intently looking towards the large crowd of people at the depot, which was about 350 feet from the crossing. The train had given one long whistle for the station about one quarter of a mile distant; and the testimony on the part of the plaintiff tended

to prove that no bell was rung and no whistle blown from that point until just at the time the train struck the wagon, when two or three blasts of the whistle were blown. The fireman saw the plaintiff for some distance as the train approached him from the rear, and when he turned and attempted to cross the track. When the fireman saw the plaintiff drive on the track, and thus realized his perilous position, the train was about 100 feet from the crossing, and he at once notified the engineer. The engineer applied the brakes, and made every effort to stop the train, but could not do so in time to avoid the collision on account of the speed of the train. But the bell was not rung, and the whistle was not blown, and no danger signal was given. The plaintiff was a minor; and the testimony tended to prove that he was about sixteen years old and of inferior intelligence; and, as one witness expressed it, he was not bright.

The plaintiff requested the court to give the following instructions, but the court refused to give any of them:

"1. You are instructed that if you find from the evidence that the plaintiff, Phil Garrison, while crossing the track of the defendant's railroad, was struck by its engine and injured, this is *prima facie* negligence on the part of the defendant, and is sufficient to cast upon it the burden of proving that the injury was not caused by its fault.

"2. You are further instructed that it is the duty of a railroad company to sound the whistle or ring the bell within at least 80 rods of a public crossing, and to keep the whistle sounding or the bell ringing until the crossing is passed, or the train stops, and a failure to do so is negligence.

"3. You are instructed that it is the duty of a railroad company operating its trains in this State to keep a lookout for persons on its track; and if it fail to do this, and an injury occurs to persons on its track caused by such failure, then the railroad company is guilty of negligence.

"4. Contributory negligence is a defense, and must be proved by a preponderance of the evidence by the party asserting it. And in this case you are told that while it was the duty of the defendant to keep a lookout for persons on its track, and that if it failed to do this and the injury occurred on account of such failure, it is guilty of negligence, and you should

find for the plaintiff, unless you further find that the plaintiff was guilty of contributory negligence in going on the track; but you are further told that contributory negligence is the want of such ordinary care as persons of ordinary prudence would use under the existing circumstances, and in consideration of this question you are instructed that the law only required the exercise of a degree of care commensurate with the plaintiff's age, intelligence, capability and all the surrounding circumstances of the case."

At the request of the plaintiff the court gave the following instruction:

"5.   You are instructed that, notwithstanding you may find that the plaintiff was guilty of contributory negligence in getting on the railroad track in front of the approaching train, yet if you find from the evidence that the engineer or fireman on the engine saw the plaintiff and his perilous condition in time to have avoided injuring him, and they failed to use all the means in their power to avoid the injury, you will find for the plaintiff."

At the request of the defendant the court gave the following instructions:

"7.   The jury are instructed that defendant's employees in charge of the engine that struck plaintiff had the right to assume that the plaintiff was rational, and that he would exercise reasonable care and caution to keep himself out of danger; and if the jury believe from the evidence that when the employees in charge of the engine first came in sight of plaintiff he was so far removed from the track as to be free from danger of collision, then they had a right to assume that he would remain at such safe distance, and that he would stop before going upon the track in front of the moving engine.

"8.   If the jury believe from the evidence that the defendant's cars were being hauled by a locomotive engine upon its tracks, and that plaintiff was seated in a wagon drawn by mules upon the public crossing or highway, and that both were approaching such highway where it crossed the defendant's railway under circumstances indicating that a collision between them would likely occur, if they both proceeded without stopping, the engineer in charge of the train had a right to presume

that the plaintiff would stop before he drove upon the track in front of the moving engine, and the engineer had the right to proceed with his engine and train until he discovered that the plaintiff was not going to stop when it was too late to stop the train, if you find it was too late, to avoid the collision, and for that reason plaintiff was struck by the engine and injured, the defendant would not be liable, and you should find for the defendant."

Upon its own motion the court gave the following instruction to the jury:

"9. Gentlemen of the jury, under the undisputed evidence in this case the plaintiff is guilty of contributory negligence that bars his recovery, provided the agents of the defendant in charge of its engine did not discover his perilous position in time to have avoided it; and as to whether they did discover his perilous position in time to have avoided the injury is a question for you to decide, and the burden is on the plaintiff in this case to show by a greater weight of evidence that either the engineer or the fireman did discover his perilous position."

In his closing argument to the jury, the counsel for the plaintiff said: "Gentlemen of the jury, the great weight of the evidence in this case shows that the plaintiff was looking toward the depot; that he did not see the approaching train; that the bell was not ringing or the whistle blowing; that the men in charge of the train, or at least one of them, the fireman, saw the plaintiff was driving on the track when the train was between forty feet and seventy-five feet from the crossing; that the train was gliding almost noiselessly in; and if the engineer or fireman had sounded the whistle or rung the bell as the law required them to do, the plaintiff could have heard the sound, and would have been warned of the approaching danger, and could have escaped the injury. When the fireman saw him going on the track, it was his duty to not only use all of the means in his power to stop the train; but it was also his duty to ring the bell and sound the whistle or warn him of the peril so that the plaintiff might escape." To this argument the defendant objected, and the court sustained the objections of the defendant and said: "Gentlemen of the jury, the ringing of the bell and the sounding of the whistle are not

in this case, and you will pay no attention to any argument about the blowing of a whistle or the ringing of a bell."

The jury returned a verdict in favor of the defendant, and from the judgment entered thereon the plaintiff prosecutes this appeal.

*J. O. A. Bush,* for appellant.

When the injury is shown, the company is *prima facie* liable. Kirby's Dig., § 6773; 63 Ark. 636; 33 Ark. 816; 49 Ark. 535; 57 Ark. 136; 80 Ark. 19; 73 Ark. 548. It was the duty of the company to keep the bell ringing or whistle sounding until the crossing was passed. Kirby's Dig., § 6595; 53 Ark. 201; 69 Ark. 134; 71 Ark. 427. What would be ordinary care for a boy of tender years might be culpable negligence in an adult. 81 Ark. 190; 15 Wall. 401; 81 Ga. 416; 71 Ill. 607; 26 Ore. 180; 78 Ark. 62; 25 L. R. A. 667. Seeing a person on the track who, it seems, is not likely to get out of the way, the company's employees should give extra alarm. 46 Ark. 523; 74 Ark. 412; 84 Ark. 275; 87 Ark. 631; 16 L. R. A. (N. S.) 301. The bell and whistle are for sounding danger signals. 87 Ark. 631.

*Kinsworthy & Rhoton,* for appellee.

Failure to look and listen before attempting to cross a railway crossing is evidence of negligence; and, if injury result to the traveler under such circumstances, he cannot recover. 54 Ark. 431; 56 Ark. 457; 61 Ark. 549; 62 Ark. 156; 69 Ark. 134; 65 Ark. 235; 76 Ark. 224. The most that plaintiff was entitled to have the court say to the jury was that, if his peril was discovered by the trainmen in time to avoid the injury, there might be a liability, notwithstanding plaintiff's contributory negligence. 54 Ark. 431; 69 Ark. 380; 77 Ark. 401; 49 Ark. 257; 50 Ark. 477.

FRAUENTHAL, J., (after stating the facts.) The plaintiff was injured while attempting to cross the railroad track of the defendant at a public crossing. The care and diligence that is required of the ordinary traveler upon the highway at the intersection of a railway is well settled in this State. It has been repeatedly held by this court that it is negligence for one who approaches a railroad crossing to fail to look and listen

for the approach of trains, and only in exceptional cases is it proper to submit to the jury the question as to whether the failure to exercise such care is excusable. The general rule of law is that the failure to exercise that care and diligence is such negligence as will defeat a recovery for any injury that is the consequent result thereof. *Railway Company* v. *Cullen,* 54 Ark. 431; *Little Rock & F. S. Ry. Co.* v. *Blewitt,* 65 Ark. 235; *St. Louis & S. F. Rd. Co.* v. *Crabtree,* 69 Ark. 135; *St. Louis, I. M. & S. Ry. Co.* v. *Hitt,* 76 Ark. 225; *Tiffin* v. *St. Louis, I. M. & S. Ry. Co.,* 78 Ark. 55; *Scott* v. *St. Louis, I. M. & S. Ry. Co.,* 79 Ark. 138.

But this rule of law is applicable to adults and to those minors who have the full measure of discretion attributed to adults. It is not a rule that is applicable to all minors, and is not applicable to those minors who have not the capacity or intelligence to appreciate the dangers, or the discretion to guard against them. The standard for judging the conduct of a minor is not the care and prudence that would be exercised by an adult, but only that of one of his age, intelligence and discretion; and it cannot be said as a matter of law that a minor is guilty of contributory negligence under circumstances that would declare an adult to be guilty of such negligence.

In the case of *Washington & Georgetown R. Co.* v. *Gladmon,* 82 U. S. 401, it is said that the rule of law in regard to negligence of an adult and the rule in regard to that of an infant is quite different. The adult must give that care and attention for his own protection that is ordinarily exercised by persons of intelligence and discretion. Of an infant less discretion is required, and the degree depends upon his age and knowledge. "The caution required is according to the maturity and capacity of the child, and this is to be determined in each case by the circumstances of that case."

The Supreme Court of Georgia has well said: "But, conceding that average may serve as a standard in adults, it will not follow that a like standard should have recognition as to children. Could we assume an ideal constant as to the former, who that knows how precocious are some children and how backward are others would carry the assumption down to childhood and apply it to children? Capacity  *  *  *  is the main

thing. Age is of no significance except as a mark or sign of capacity. \* \* \* The study of these and other like cases will lead to two conclusions: first, that no court can hold that childhood and manhood are bound to observe the same degree of diligence; secondly, that while the same ordinary care is frequently applied to the diligence exacted by law of a child, there is little propriety in so doing. Due care is always the better and more accurate description. \* \* \* Due care on the part of this boy might fall far short of that of a prudent man." *Western & Atlantic Ry. Co.* v. *Young,* 81 Ga. 397.

In the case of *St. Louis, I. M. & S. Ry. Co.* v. *Sparks,* 81 Ark. 187, this court has said: "It has been frequently held that a child is not required to exercise the same capacity for self-preservation and the same prudence that an adult should exercise under like circumstances." In determining the question of contributory negligence the age and intelligence of the person charged therewith must be considered. A minor should be only held to exercise that care which one of his age, intelligence and ordinary prudence would exercise under the circumstances. In the case of a minor, therefore, it becomes a question of fact for the jury to determine, after taking into consideration his age, intelligence and capacity, whether or not, under the circumstances of the case, he was guilty of contributory negligence; and it cannot be said as a matter of law that the minor of tender years or of inferior intelligence or discretion is guilty of contributory negligence. *St. Louis S. W. Ry. Co.* v. *Bolton,* 36 Tex. Civ. App. 87; *Robinson* v. *Metropolitan St. Ry. Co.,* 86 N. Y. Supp. 443; *Byrne* v. *Railroad,* 83 N. Y. 620; *Dowd* v. *Chicopee,* 116 Mass. 93; 3 Elliott on Railroads, § 1172.

The plaintiff in this case was a boy 16 years old, and was of inferior intelligence. The testimony tended to show that he was not bright, and did not have good understanding. What would be ordinary care for such a boy to exercise might be culpable negligence in an adult. Under the circumstances of this case, it cannot therefore be said as a matter of law that he was guilty of contributory negligence. The court therefore erred in giving the instruction of its own motion declaring the plaintiff guilty of contributory negligence, and in refusing to

give said instructions numbers 1, 2, 3 and 4 requested by the plaintiff. And instruction number 8 given at the request of the defendant should have been modified by adding thereto the following: "Provided the engineer after the discovery of the perilous position of the plaintiff exercised due and ordinary care in using all the means within his power to avoid the injury."

We are also of the opinion that the court erred in instructing the jury that "the ringing of the bell and the sounding of the whistle are not in this case, and you will pay no attention to any argument about the blowing of the whistle or the ringing of the bell." Under the ruling which we have made above, the question of contributory negligence on the part of plaintiff was under the circumstances of this case a question of fact for the jury to determine. And therefore it became also a question of fact for the jury to determine as to whether or not the defendant was guilty of any negligence by failing to ring the bell or blow the whistle before the actual perilous position of the plaintiff was discovered. But, in addition to this, after the perilous position of the plaintiff upon the track was discovered by the defendant, it then became a question of fact for the jury to determine as to whether or not the failure to give warning signals was an act of negligence on the part of the defendant.

If the plaintiff was guilty of negligence in the manner in which he approached and went on the track, still the defendant was bound to use ordinary care to avert the injury after the peril of plaintiff was discovered. "The failure to use ordinary care to avoid injuring the plaintiff after his perilous situation has been discovered renders immaterial the inquiry as to the contributory negligence of the plaintiff in exposing himself to injury." *St. Louis S. W. Ry. Co.* v. *Thompson,* 89 Ark. 496.

In *St. Louis, I. M. & S. Ry. Co.* v. *Evans,* 74 Ark. 407, it is said: "The contributory negligence of a party is no defense where the direct cause of the injury complained of is the omission of the defendant to use a proper degree of care to avoid the consequences thereof." In that case it is said: "Appellant is not liable in this case because its servants did not stop the train, or because they ran the locomotive at an unusually high

rate of speed; but it is liable because of the fact that, under those circumstances, seeing the deceased on the track ahead of the swiftly approaching train and giving no evidence that he was aware of its approach, they negligently failed to give him any warnings of the peril."

In 2 Thompson on Negligence, § 1741, it is said: "The most obvious suggestion of prudence and social duty requires that the engineer who is driving the train shall give warning signals to a trespasser whom he sees on the track in front of the train, with his back to it, in sufficient time to enable him, after hearing the signals, to quit the track in safety." *Evans* v. *St. Louis, I. M. & S. Ry. Co.*, 87 Ark. 628.

In the case at bar the testimony tended to prove that when the plaintiff drove upon the track and his perilous situation was discovered by the fireman the train was 100 feet distant from him. The fireman saw that the plaintiff's back was towards the train, and that he was looking and had been looking away from the train, and had not seen the train; and the plaintiff's conduct and appearance gave evidence that he was wholly unaware of the train's approach. From the evidence the jury could have found that the train was then at such a distance that he might have quit the track in safety if he had been warned of the approach of the train. It then became a question for the jury to determine as to whether or not the defendant's servants were guilty of negligence in failing to give the warning signals.

For the errors above indicated, the judgment is reversed, and this cause is remanded for a new trial.