Ronald SAMS, a Minor, by and through William L. Sams and Mary Lee Sams, His Father and Mother and Next Friends, and William L. Sams and Mary Lee Sams, Individually, Plaintiffs,

v.

PACIFIC INDEMNITY COMPANY, Defendant.

Civ. A. No. 706.

United States District Court
W. D. Arkansas,
Texarkana Division.

March 4, 1959.

Connor W. Patman, Texarkana, Tex., George F. Edwardes, Texarkana, Ark., for plaintiffs.

Shaver, Tackett & Jones, Texarkana, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

The plaintiffs, Ronald Sams, a minor, by his next friends, William L. Sams and Mary Lee Sams, and William L. Sams and Mary Lee Sams, individually, as father and mother, respectively, of the minor plaintiff, filed their complaint against defendant in which the minor plaintiff seeks to recover damages for personal injuries sustained by him on December 16, 1957, as the result of the alleged negligent operation of a school bus belonging to the Genoa-Central Consolidated School District and driven by Elmer Ward, an employee of the school district. The plaintiffs, William L. Sams and Mary Lee Sams, as parents of the minor plaintiff, seek to recover medical and hospital expenses incurred by them and for the loss of companionship and the services of the minor plaintiff because of the alleged negligence.

The plaintiffs in their complaint specifically alleged that defendant was guilty of the following acts of negligence:

(1) That the bus was being driven at an excessive rate of speed under the circumstances and conditions existing;

(2) That the bus was being operated in such a manner that the driver did not have complete control of the same;

(3) That the driver failed to use his brakes and other mechanical apparatus under his control to stop, turn or otherwise maneuver the bus or give warning to the children in the school yard, including the minor plaintiff, of the approaching danger;

(4) The driver should have turned his vehicle to the left and avoided striking the minor plaintiff;

(5) The driver failed to keep and maintain a proper and efficient lookout of such a nature and character as would have enabled him to discover the position of the minor plaintiff at a time when he could have stopped and avoided inflicting the injury upon the plaintiff;

(6) That if the driver did maintain such lookout that he discovered the perilous situation of the minor plaintiff in time, he could have avoided striking and running over the minor plaintiff; and

(7) That the driver was negligent in failing to so operate his bus with due regard for the safety of the children at play and as a direct result of each of all acts and omissions separately and concurrently, the driver failed to perform his duty and negligently injured the minor plaintiff.

In an amendment to the complaint the plaintiffs further alleged:

(1) That the driver of the bus drove and operated the same at a time when the bus was not equipped with mirrors or means by which he could see on the right-hand side of the bus;

(2) That the driver was negligent in operating the bus at a time when he could not perform the duty of exercising the proper lookout for children upon and about the premises; and

(3) That the vehicle was defective by reason of not having proper mirrors and a proper view to be operated in close proximity with children of tender age.

The defendant in its answer admitted that the plaintiffs are each citizens of Arkansas and reside in Miller County; that it is a foreign corporation and is authorized to do business in Arkansas and that it issued a policy of insurance to the school district as authorized by the Statutes of Arkansas; that Elmer Ward was employed by the school district as a bus driver and was driving the bus on the 16th day of December, 1957.

The defendant in defense of the claims of plaintiffs alleged:

"That at the time of the alleged accident herein, Elmer Ward, operator and driver of the involved school bus, was driving said bus in a careful and prudent manner and with due regard for the safety of others who might be upon and using the school grounds and that the accident and resulting injuries to the plaintiff, Ronald Sams, happened without any fault or carelessness on the part of the bus driver, Elmer Ward, but that the sole and proximate cause of said accident and resulting injuries to the minor child was the negligence of the said minor child, Ronald Sams, in that he was running by the side of the bus and touching same with one hand as same was approaching and entering the school grounds of said consolidated school district, all of which was to the rear of and beyond the vision of the driver of the bus. Therefore, defendant pleads said contributory negligence upon the part of the minor plaintiff, Ronald Sams, as a complete bar to any recovery herein by plaintiffs.

"Further answering, defendant states that the said accident and resulting injuries to Ronald Sams happened without any fault or carelessness on the part of the bus driver but was the result of an unavoidable accident over wihch this defendant had no control and for which this defendant would not be liable."

Ark.Stat.Ann. Sec. 66–517 (1947), provides that where liability insurance is carried by a school district "and any person * * * suffers injury or damage to person or property on account of the negligence or wrongful conduct of any such organization ' * * *, its servants, agents or employees acting within the scope of their employment or agency, then such person, * * * so injured or damaged shall have a direct cause of action against the insurance company or insurance association with which said liability insurance is carried to the extent of the amount or amounts provided for in said policy of insurance * * * and the plaintiff or plaintiffs may proceed directly against said insurer regardless of the fact that the actual tort-feasor may not be sued under the laws of this State."

The case was tried to the court without a jury on February 24, 1959.

The pleadings, the evidence and the arguments of the attorneys for the respective parties have been fully considered, and the court now files this opinion in lieu of formal findings of fact and conclusions of law, and incorporates herein as a part hereof the findings of fact and conclusions of law as provided by Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

The minor plaintiff, Ronald Sams, was ten years old November 24, 1957. He was regularly enrolled and attended the consolidated school operated in the Genoa-Central Consolidated School District in Miller County, Arkansas. The school district operated a number of school buses to transport the pupils to and from the school. One of the buses was driven by Elmer Ward, an employee of the district, and on December 16, 1957, while acting within the scope of his em-

ployment in delivering the second bus load of pupils to the school building, the minor plaintiff was injured when he fell under the bus and the right rear dual wheels passed over the mid-section of his body.

The elementary, junior high and high school grades are all housed in the main school building which is located south of a county road that runs in an east-west direction. The usual place for unloading the pupils was on the south side of the building between the east and west wings. Ward, the driver of the bus, on the occasion under consideration, drove from the road across a cattle guard and entered the school grounds in the usual and customary manner. When he had crossed the cattle guard he drove south along the driveway on the east side of the school building until he reached the southeast corner of the east wing where the driveway turned west along the south end of the east wing, and proceeded along said driveway until he reached a point near the southwest corner of the said wing which was the east edge of the opening of the courtyard between the east and west wings. The courtyard was sixty feet wide east and west, and it was customary to discharge pupils at the south end of the courtyard between two trash barrels that were placed one at or near the southwest corner of the east wing and the other at the southeast corner of the west wing.

The testimony does not disclose how many sessions of the school had been attended by the minor plaintiff, but he was in his second or third year, if not his fourth, at the school. On this occasion, when the bus crossed the cattle guard from the highway and started south along the east side of the east wing, the minor plaintiff, along with two or three other boys, was standing near the northeast corner of the building. The bus entered the driveway traveling between five and ten miles per hour. The driver of the bus saw the minor plaintiff and the other boys at the time he entered the driveway, but did not see the minor plain-

tiff again until he stopped his bus for the purpose of unloading the pupils.

The testimony does not disclose the width of the driveway which the bus entered, but it was an improved driveway and ran several feet east of the east wall of the building. Another bus had preceded the bus being driven by Ward and had unloaded and was parked south of the main building on the school grounds. The driver of that bus, Mr. Huddle A. Ferguson, had left his bus and was walking north toward the cattle guard while Ward was driving south along the driveway. Ferguson saw the minor plaintiff come from near the northeast corner of the building after the bus had passed, and begin running south behind and toward the moving bus. He watched him until the bus turned to the west around the southeast corner when both bus and the minor plaintiff passed from his view. There is some dispute in the testimony as to whether the minor plaintiff had caught up with the bus when it turned west and whether he was running alongside of the bus or whether he was near the right front of the bus and had reached a point where he could be seen by the driver of the bus prior to the time he fell under the bus and was run over. Three witnesses—Wallace Bealle, Jimmy Smith and Teddy Smith—were standing near the southwest corner of the west wing, a distance of sixty or seventy feet from where the bus stopped. They testified that the minor plaintiff was running alongside the bus about even with the right door or slightly in front of the bus immediately before he was thrown or fell under the bus. On the other hand, Glenda Ward, Mary Ann Page, Juanita Redfearn and Charlotte Rice were near the southwest corner of the east wing and within a few feet of the bus as it approached for the purpose of unloading the pupils. They testified that the minor plaintiff was well towards the right rear of the bus and was running alongside with his left hand touching the bus when he either stumbled or was thrown in some manner under the bus and suffered the injuries complained of.

The court finds from a preponderance of the testimony that the boy was not even with the front door or in front of the bus, and was not in a position that he could have been seen while running parallel with the bus by the driver thereof.

. The driver of the bus turned it slightly to the right before stopping, but did not leave the driveway and stopped at the usual place for unloading. Before stopping, the driver of the bus could not have seen the boy because of the position of the boy. He did not know and could not have known the boy was in a place of danger.

The bus was twenty-nine or thirty feet long and the body of the bus was several inches wider than the hood and front fenders. It was equipped with a conventional outside mirror near the driver's seat to enable the driver to observe persons or vehicles approaching from the rear and on the left side. It was also equipped with an inside mirror, the purpose of which was to enable the driver to observe the conduct of the passengers. The door for entrance and discharge of pupils was located on the right side near the front end and contained glass panels through which it was possible for a driver to see anyone as they approached the door on the right-and side of the bus.

The plaintiff had on occasions chased the school buses. The principal of the elementary school testified that he had seen the boy chasing buses when they came into the school grounds, and on at least one occasion punished either the plaintiff or his twin brother for such conduct.

The Superintendent of the School and the Coach arrived upon the scene within a few seconds after the plaintiff had been run over, and he was removed to the "sick room."

The minor plaintiff suffered serious injuries, and he was under the care of physicians for several days. All medical expenses were paid under the provisions of a policy of insurance held by the school district. When that fact was established, the attorney for the father and mother of the minor plaintiff did not further pursue the claim for the recovery of such expense. The conclusion reached by the court makes it unnecessary to consider the extent of such injuries.

The plaintiffs rely upon certain Statutes of Arkansas.

Ark.Stat.Ann. Secs. 27–1730.1 and 27–1730.2 (Supp.1957), provides that contributory negligence shall not bar recovery of damages for any injury, property damage or death where the negligence of the person injured or killed is of less degree than the negligence of the person causing such injury, and that the contributory negligence of the injured person shall not prevent a recovery where the negligence of the person so injured is of less degree than any negligence of the person causing the injury, and further provides that where such contributory neligence is shown on the part of the person injured the amount of the recovery shall be diminished in proportion to such contributory negligence.

Ark.Stat.Ann. Sec. 75–628(d) (1947), provides that every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway.

Ark.Stat.Ann. Sec. 75–652 (1947), provides that no person shall drive a vehicle when it is so loaded, or when there are in the front seat such number of persons, exceeding three, as to obstruct the view of the driver to the front or sides of the vehicle so as to interfere with the driver's control over the driving mechanism of the vehicle.

The minor plaintiff was slightly more than ten years of age when the injury was received, and he was tendered as a witness. The court permitted him to testify, but he was unable to recall what occurred immediately prior to the injury, and his testimony was of no assistance to the court in determining whether he ap-

preciated the danger in which he placed himself by running alongside the bus.

The principal contention of the plaintiffs is that the minor plaintiff was a child of tender age and could not be guilty of contributory negligence such as to bar a recovery for the injuries received, and that the driver of the bus was guilty of negligence as alleged in the complaint and amendment thereto which proximately caused the injuries to the minor plaintiff.

A child of tender years, if incapable of apprehending the danger to which he is exposed and of exercising the prudence or foresight necessary to protect himself against the same, cannot legally be guilty of contributory negligence. St. Louis, I. M. & S. R. Co. v. Colum, 72 Ark. 1, 77 S.W. 576.

In Garrison v. St. Louis, Iron Mountain and Southern Railway Company, 92 Ark. 437, at page 444, 123 S.W. 657, at page 661, the court in quoting from St. Louis, I. M. & S. R. Co. v. Sparks, 81 Ark. 187, 99 S.W. 73, said:

" 'It has been frequently held that a child is not required to exercise the same capacity for self-preservation and the same prudence that an adult should exercise under like circumstances.' In determining the question of contributory negligence, the age and intelligence of the person charged therewith must be considered. A minor should be only held to exercise that care which one of his age, intelligence, and ordinary prudence would exercise under the circumstances. In the case of a minor, therefore, it becomes a question of fact for the jury to determine, after taking into consideration his age, intelligence, and capacity, whether or not, under the circumstances of the case, he was guilty of contributory negligence; and it cannot be said as a matter of law that the minor of tender years or of inferior intelligence or discretion is guilty of contributory negligence. St. Louis Southwestern R. Co. of

Texas v. Bolton, 36 Tex.Civ.App. 87, 81 S.W. 123; Robinson v. Metropolitan St. R. Co., 91 App.Div. 158, 86 N.Y.S. 442, 443; Byrne v. New York Cent. & H. Railroad Co., 83 N.Y. 620; Dowd v. Inhabitants of Chicopee, 116 Mass. 93; 3 Elliott on Railroads, § 1172."

Thus it is a question of fact to be determined after taking into consideration the age, intelligence and capacity of an injured child whether or not under the circumstances he was guilty of contributory negligence, and where a driver of a motor vehicle knows of the presence of a child in, near or adjacent to the place of the operation of the vehicle or should know that a child may reasonably be expected to be in the vicinity, the driver is under a duty to exercise care, usually stated to be reasonable, ordinary, due, or proper care, for the safety of the child.

In Murphy v. Clayton, 179 Ark. 225, at page 229, 15 S.W.2d 391, at page 393, the court said:

"Care must be exercised commensurate with the danger reasonably to be anticipated. What is 'ordinary care' is a relative term dependent upon the facts and circumstances of each particular case."

The infancy of a plaintiff in a negligence action does not supply the place of negligence on the part of the defendant. In 38 Am.Jur., Negligence, Sec. 40, page 685, the rule is stated as follows:

"The infancy of the plaintiff in a negligence action does not supply the place of negligence on the part of the defendant. However, a child's age and lack of capacity to appreciate peril, where such facts are known or should be known to one who comes in contact with the child, are important in determining whether he is negligent toward the child. More care must be exercised toward children than toward persons of mature years. Children of tender years and youthful persons generally are en-

titled to care proportioned to their inability to foresee and avoid the perils that they may encounter, as well as to the superior knowledge of persons who come into contact with them. The duty to avoid doing them an injury increases with their inability to protect themselves, and with their childish indiscretions, instincts, and impulses. A child of immature years has capacity to exercise and is required to exercise for his own safety only such care and self-restraint as belong to childhood. A reasonable man is presumed to know this, and to govern his actions accordingly. In all cases, the caution required is according to the maturity and capacity of the child—a matter to be determined in each case by the circumstances of that case."

In Arkansas Valley Trust Company v. McIlroy, 97 Ark. 160, 133 S.W. 816, 31 L.R.A.,N.S., 1020, the court, beginning near the bottom of page 164 of 97 Ark., at page 818 of 133 S.W., said:

"Before one can be held liable for an alleged negligent act, it must be the proximate cause of the injury and also of such a nature that the consequent injury should be one which in the light of the attending circumstances a person of ordinary foresight and prudence would have anticipated. As is said in the case of St. Louis, I. M. & S. Ry. Co. v. Bragg, 69 Ark. 402, 64 S.W. 226: 'It is a fundamental rule of law that to recover damages on account of the unintentional negligence of another it must appear that the injury was the natural and probable consequence thereof, and that it ought to have been foreseen in the light of the attending circumstances.'

"In the case of Gage v. Harvey, 66 Ark. 68, 48 S.W. 898, 43 L.R.A. 143, Mr. Justice Battle said: 'In determining whether an act of a defendant is the proximate cause of an injury the rule is that the injury must be the natural and probable consequence of the act; such a con-sequence, under the surrounding circumstances of the case, as might and ought to have been foreseen by the defendant as likely to flow from his act.' 21 Am. & Eng.Enc.Law, 489; 29 Cyc. 493; St. Louis, I. M. & S. R. Co. v. Buckner, 89 Ark. 58, 115 S.W. 923, 20 L.R.A.,(N.S.), 458."

The case of Catlett v. St. Louis, I. M. & S. Railway Company, 57 Ark. 461, 21 S.W. 1062, was a suit by a boy eleven years of age seeking to recover damages for injuries sustained by falling from a moving freight train. There was a heavy grade on defendant's road beginning at or near the town of Wynne, Arkansas, and extending east about one mile. Freight trains in ascending this grade were unable to move except at such a slow rate of speed that persons could take hold and climb on. It was the custom of the boys of the town to ride on the train to the top of the hill. In order to avoid violating a prohibitory ordinance they would climb aboard the train outside the corporate limits. The plaintiff, although he had been repeatedly warned by his parents not to climb up on the moving trains and had been punished once or twice for disobeying them in that regard, had been accustomed to stealing rides on the train. On the day of the accident plaintiff attempted to catch the lower round of the ladder on the side of a box car, missed the ladder, caught a strap and was jerked under the moving wheels. One foot was cut off and a part of two toes of the other foot. No one in charge of the train saw plaintiff attempt to get on or knew anything of the accident at the time. There was evidence that the trainmen knew that the boys were in the habit of stealing rides on the train in that place. Sometimes they paid no attention to the boys while riding; at other times they made them get off. At the conclusion of the plaintiff's testimony, the trial judge, at page 463 of 57 Ark., 21 S.W. 1062, said:

"The view that I take of this case will render it unnecessary to consider the instructions asked. In actions of this kind for personal injury, to

entitle plaintiff to recover, it must appear that the negligence of the defendant was the proximate cause of the injury. To hold the defendant liable in this case, I think there must have been some negligence on the part of the persons operating that particular train that injured Alsey Catlett. Now, Alsey Catlett was not upon the track, either in front or behind the train. He attempted to board it from the side. There is no evidence tending to show that any person in charge of the train saw him at the time, or knew that he intended to make such an attempt. To hold the defendant responsible for his injury I should have to hold that the train men were bound to keep a lookout to prevent persons from attempting to board the train, and that their failure to do so was negligence. I do not think that the law imposes any such duty upon persons in charge of a train. The men in charge of this train were simply operating it as under the law they had a right to do, and there is nothing in the evidence tending to show negligence on their part, and nothing to submit to the jury."

The judgment of the trial court was affirmed on appeal, and the court, at page 465 of 57 Ark., at page 1062 of 21 S.W., said:

"The appellant argues that a slow moving train is 'dangerous machinery,' alluring to boys; and that it is therefore negligent of the company to fail to take precaution to keep them off such trains. That is the argument made to sustain a class of cases known as the 'Turn Table Cases,' the leading one of which is Sioux City & Pacific Railroad Co. v. Stout, 17 Wall. 657, 21 L.Ed. 745. The doctrine of those cases has been much criticised and doubted, and by some courts repudiated. See Daniels v. New York & N. E. R. Co., 154 Mass. 349, 28 N.E. 283, 13 L.R.A. 248; Patterson, Ry. Accident Law, § 196. Whatever its merits may be, it

has never been extended to such length as to control a case like this. See Bishop v. Union R. Co., 14 R.I. 314; Shelton v. St. Louis, K. C. & N. Ry. Co., 60 Mo. 412.

"The youth of the person injured will sometimes excuse him from concurring negligence, but no amount of youthful recklessness can supply the place of proof of negligence on the part of a defendant sought to be charged on account of negligence. Patterson's Ry. Accident Law, § 75.

"There was no proof of negligence on the part of the company."

In Sanders v. Baird, 195 Ark. 535, at page 540, 112 S.W.2d 966, at page 968, the court quoted with approval the holding in the Catlett case, supra.

In Smith v. Wittman, 227 Ark. 502, at page 503, 300 S.W.2d 600, at page 601, the court said:

"At the plaintiffs' request the court instructed the jury that a child under four is incapable of negligence or contributory negligence. The appellants complain of an instruction, given for the defendant, by which the jury were told that a motorist has the right to assume that a pedestrian will obey traffic laws and may proceed upon that assumption until he knows or should know that the pedestrian will not do so. It is argued that the effect of this instruction was to require the child to obey the traffic laws. We do not think so at all. The court had already excluded the possibility of negligence on the part of the child; the instruction now in question dealt with the situation from Wittman's point of view and merely stated an assumption that a motorist may rely upon in the operation of his car. Kendrick v. Rankin, 219 Ark. 736, 244 S.W.2d 495."

■ Regardless of whether the statement quoted from Smith v. Wittman, supra, is the correct statement of the law, it is undoubtedly the law of Arkansas

that the duty of such care on the part of the driver of the school bus would not arise until the minor plaintiff was actually observed or should have been observed in a place of danger. Smith v. Wittman, supra, 227 Ark. at page 504, 300 S.W.2d at page 601.

■ The driver of the bus came into the school ground on the driveway provided for that purpose. He was driving at a very moderate rate of speed when he crossed the cattle guards and entered the driveway which extended along the east side of the building and thence along the south side to the usual place for the passengers to depart from the bus. The trip was his second one that morning and the bus was loaded with forty-eight school children, doubtlessly of various ages. No doubt the driver of the bus was giving close attention to the school children being conveyed by him as the law requires him to do. He had no notice that the plaintiff was pursuing the bus, or that he was in a place of danger along the right side of the bus, until after the plaintiff had fallen under the bus. While it is true that the driver of the bus turned the bus slightly to the right when he was proceeding west along the south side of the building, he did not leave the driveway and if he turned he did so to stop at the usual and customary place for unloading the passengers.

The plaintiffs contend that it was negligence to drive a bus without a mirror on the right-hand side so situated that the driver could see a person approaching along the right-hand side of the bus. The bus was similar to many thousands that are daily traversing the highways and entering school grounds for the discharge of school children. No testimony was introduced showing or tending to show that the bus was not constructed as are all other such buses, and to hold the defendant liable under the facts as found by the court would be tantamount to making the defendant an insurer of the safety of any child of the age and experience of the minor plaintiff and under similar circumstances.

The plaintiffs have cited the cases of Tenney v. Reed, 1928, 262 Mass. 335, 159 N.E. 913, and Taylor v. Oakland Scavenger Co., 1941, 17 Cal.2d 594, 110 P.2d 1044. No new principles of law are announced by these cases, and the legal principles applied are in conformity with the prevailing law of Arkansas. The decisions in all cases that the court has examined are based upon the facts, and the decisions in the Tenney and Taylor cases, supra, in no wise control the decision in the case at bar.

■ The defendant earnestly contends that the minor plaintiff was negligent and that such negligence was the proximate cause of the injury received by him. The court is well aware that the standard by which to measure the conduct of a child as regards the question of negligence is that degree of care ordinarily exercised by children of the same age, capacity, discretion, knowledge and experience under the same or similar circumstances. It is true that the infancy of a minor plaintiff does not preclude the defense of contributory negligence if the injured child failed to exercise the care ordinarily exercised by children of the same age, capacity, discretion, knowledge and experience under the same or similar circumstances. Notwithstanding the immaturity of a minor, if it appears that he knew of the danger, as for example where the peril was obvious even to young children, and reasonably could have avoided it, but failed to do so, he may be held guilty of contributory negligence. See, 38 Am.Jur., Negligence, Sec. 204, page 884. But the court is of the opinion that it is not necessary to determine whether the minor plaintiff was guilty of negligence because there is no proof that the driver of the school bus was guilty of any actionable negligence, and regardless of whether the minor plaintiff was guilty of contributory negligence, the defendant is not liable.

In determining the claim of legal responsibility for the injuries suffered by the minor plaintiff, it is difficult to resist the temptation to substitute sentiment

918

for law and reason, but under the applicable legal principles there can be no recovery by the plaintiffs, and judgment dismissing the complaint and the amendment thereto is being entered today.